*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Guardianship of TYLER J. NEWLAND.

---

ALETHIA BATTLES,

   Petitioner-Appellee,

v

TYLER J. NEWLAND, a legally incapacitated person,

   Respondent-Appellant,

and

KATHRYN E. MACEWEN CONTI, Coguardian of TYLER J. NEWLAND,

   Appellee,

and

KIRSTEN NEWLAND, Coguardian of TYLER J. NEWLAND,

   Other Party.[1]

UNPUBLISHED
November 10, 2022

No. 360274
Washtenaw Probate Court
LC No. 21-001149-GA

---

Before: GARRETT, P.J., and O'BRIEN and REDFORD, JJ.

---

[1] Kirsten Newland is not a party to this appeal outside of her role as respondent's coguardian.

-1-

PER CURIAM.

This action arose from a petition to appoint a guardian for respondent Tyler Newland, an adult with substantial medical and mental health needs. Tyler opposed a guardianship because his sister, Kirsten Newland,[2] was already designated as his patient advocate and durable power of attorney (DPOA) for healthcare. Following a series of hearings, the probate court appointed coguardians—Kirsten and Kathryn MacEwen Conti—on Tyler's behalf for medical and placement decision-making. On appeal, Tyler argues that the probate court erred by appointing coguardians because there was no legal or factual basis to remove Kirsten from her role as DPOA. Because clear and convincing evidence supported the probate court's guardianship order, we affirm.

## I. FACTUAL BACKGROUND

Tyler was hospitalized with Michigan Medicine in August 2021 following a psychiatric emergency involving increased aggression towards his family. Under a DPOA for healthcare executed by Tyler in 2000, his mother Linda Newland was his patient advocate and Kirsten was the successor patient advocate; Linda deferred medical decision-making to Kirsten.

In November 2021, petitioner Alethia Battles—a clinical social worker and attorney at Michigan Medicine—petitioned for appointment of a guardian of an incapacitated individual in the probate court. The petition asserted that Tyler "lack[ed] sufficient understanding or capacity to make or communicate informed decisions because of" his mental deficiency and physical disabilities. Further, an attached letter from Battles alleged that Kirsten had become a "barrier to care" after doctors activated Tyler's DPOA and was acting inconsistently with Tyler's best interests. As examples, the letter alleged that Kirsten "challenged recommendations and opinions of numerous providers caring for Tyler," "declined to authorize and/or follow up with community agencies as needed to proceed with [Tyler's] transfer" out of the hospital, and sent staff "directed emails with language that ha[d] been perceived as threatening and/or aggressive." The letter stated that Tyler's medical providers were recommending that he transition to a subacute care facility, but Kirsten gave the providers a list of "requirements" that were not medically necessary that Kirsten wanted met before medical staff discharged Tyler. Because Tyler "remain[ed] hospitalized against his will and without any medically necessary reason to remain in an acute hospital setting," Battles requested that the court determine that Tyler was an incapacitated individual and appoint MacEwen Conti as a limited guardian with authority to make medical, mental health, and placement decisions. Kirsten filed a written objection to the petition for appointment of a guardian, claiming that Michigan Medicine "refused to honor any of [her] requests for reasonable and appropriate medical interventions" for Tyler.

At an emergency hearing before the probate court, Battles testified that Tyler was a 39-year-old man with a history of Friedreich's ataxia, a rare genetic neuromuscular condition. Tyler also had chronic respiratory failure, which required a tracheostomy and nocturnal ventilator to assist with breathing. Battles testified that physicians at Michigan Medicine activated Tyler's DPOA in August 2021 because of his desire to live independently and lack of capacity to

---

[2] Because multiple individuals share the last name of Newland, we will refer to them by their first names.

appreciate the risks of that choice. Battles also testified consistently with her previous letter that Kirsten was acting inconsistently with Tyler's best interests.

Kirsten objected to the appointment of any guardian because she held Tyler's DPOA. Kirsten testified that she had been advocating for Tyler to receive necessary mental health treatment, and the hospital "consistently rejected those efforts." Assisted by an individual using a white board so that Tyler could communicate at the hearing, Tyler stated that he did not believe that the appointment of a guardian was appropriate and that he did not want anyone to help make his decisions. At the end of the hearing, the court found that an emergency existed, that Tyler was incapacitated, and that Tyler was "ready to get out of the hospital." The court suspended Kirsten's power of attorney and granted the request for appointment of a professional temporary guardian. The court appointed MacEwen Conti as the temporary guardian with powers over medical and placement decisions.

At another hearing about one month later, MacEwen Conti requested that the court appoint Kirsten as a temporary coguardian with her because she had been "an amazing resource" so far and was "an amazing advocate" for Tyler. The court entered an order appointing MacEwen Conti and Kirsten as Tyler's temporary coguardians for medical and placement decisions.

On January 24, 2022, the probate court held an evidentiary hearing on the petition for appointment of a guardian. Dr. Shami Entenman, an expert in psychiatry, testified that Tyler was admitted to Michigan Medicine from August 4, 2021, to November 17, 2021. Dr. Entenman activated Tyler's DPOA because he consistently expressed a desire to live independently without appreciating its risks. Tyler required full-time assistance with physical tasks, including taking care of his tracheostomy, and he sometimes refused recommended medical care. Dr. Entenman believed that Tyler met the definition of an incapacitated individual because of "his physical and sensory impairments from his Friedrich's ataxia and his inability to understand the risks of living independently." When asked why a guardianship was necessary when Tyler had a DPOA, Dr. Entenman stated that "there was a multidisciplinary team decision to pursue guardianship" because of concerns that Kirsten was "interfering with our ability to continue discharge planning." Dr. Entenman opined that Tyler required a guardian for his continued care and supervision.

Kirsten testified that physicians at Michigan Medicine did not treat Tyler's psychiatric needs and "denied him all other things that [Kirsten] asked for medically as a [DPOA]." Although she had objected to a guardianship, she now believed that it was necessary because the hospital did not honor her requests as DPOA. Kirsten replied yes when asked whether a guardianship was "the least restrictive means of providing services and care" for Tyler. She agreed to acting as a coguardian with MacEwen Conti and understood that they had to work together to reach decisions in Tyler's best interests.

MacEwen Conti testified that she was Tyler's temporary coguardian since November 2021. MacEwen Conti believed that Tyler benefited from having a guardian rather than a DPOA. She stated that, in her experience, medical practitioners sometimes fail to honor a power of attorney. MacEwen Conti believed that it was beneficial to have Kirsten as a coguardian because of Kirsten's extensive knowledge of Tyler's case. While MacEwen Conti, who was a professional guardian, normally did not accept coguardianships, she made an exception because of Kirsten's knowledge of the case.

-3-

Dr. Amy Rosinski, an expert in psychiatry, testified that she contributed to Tyler's care and treatment while he was hospitalized at Michigan Medicine. Kirsten's main concern was transferring Tyler to the psychiatric unit of Michigan Medicine for treatment, but Dr. Rosinski noted that Tyler could not be admitted to the psychiatric unit because of his tracheostomy needs. Although he could not be transferred, Dr. Rosinski testified that the psychiatric consultation team treated Tyler several times per week. She explained that none of the four psychiatrists that provided care to Tyler believed he met the criteria for involuntary treatment of medication with antipsychotics. Dr. Rosinski stated that because Kirsten was so focused on obtaining psychiatric treatment for Tyler, she "sometimes [put] up barriers" to other treatment and did not respect the opinions of the physicians caring for Tyler.

During closing arguments, counsel for Tyler argued that a guardianship was inappropriate because of Tyler's opposition and his execution of a DPOA to make decisions in his best interests. The court found by clear and convincing evidence that Tyler was "impaired to the extent of lacking sufficient understanding or capacity to make or communicate informed decisions and [was] an incapacitated individual." Despite the existing DPOA, the court also found that "[a]ppointment of a guardian [was] necessary as a means of providing continuing care and supervision." The court found that Tyler was "partially without the ability to care for himself." As a result, the court appointed MacEwen Conti and Kirsten as coguardians for medical and placement decisions. The court noted that the guardianship letters would take priority over the DPOA.

Tyler now appeals from the probate court's order appointing coguardians.

## II. STANDARDS OF REVIEW

We review a probate court's dispositional rulings for an abuse of discretion.[3] *In re Bibi Guardianship*, 315 Mich App 323, 328; 890 NW2d 387 (2016). An abuse of discretion occurs when the probate court's decision falls outside the range of reasonable outcomes. *Id*. at 329. We review the factual findings underlying a probate court's ruling for clear error, deferring to those findings unless "left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted). Similarly, we "defer to the probate court on matters of credibility, and will give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court." *In re Guardianship of Redd*, 321 Mich App 398, 412; 909 NW2d 289 (2017) (quotation marks and citation omitted). We also review issues of statutory interpretation de novo. *Id*. at 404. "De novo review means that we review the legal issue independently" and without deference to the trial court. *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019).

---

[3] While Tyler argues that the probate court committed plain error by appointing coguardians, this issue was properly preserved for appellate review, and we properly review the probate court's ruling for an abuse of discretion.

## III. ANALYSIS

Tyler argues that the probate court erred by appointing a guardian for him when Kirsten was already acting as his patient advocate and DPOA.

The probate court may appoint a guardian if it finds by clear and convincing evidence both (1) "that the individual for whom a guardian is sought is an incapacitated individual" and (2) "that the appointment is necessary as a means of providing continuing care and supervision of the incapacitated individual." MCL 700.5306(1). An "incapacitated individual" is someone "impaired by reason of mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication, or other cause, not including minority, to the extent of lacking sufficient understanding or capacity to make or communicate informed decisions." MCL 700.1105(a).

First, the probate court did not abuse its discretion by finding that Tyler was an "incapacitated individual." Tyler's DPOA was activated in August 2021 because his medical providers and Kirsten did not believe that he had the capacity to make decisions related to independent living. Dr. Entenman believed that Tyler was an incapacitated individual because of his physical impairments and his "inability to understand the risks of living independently." Tyler required full-time assistance with physical tasks and sometimes refused recommended medical care, such as wearing his ventilator at night and taking his medications. Still, Tyler consistently expressed a desire to live independently. While we sympathize with Tyler's wish, clear and convincing evidence supported the probate court's finding that Tyler was an incapacitated individual. The evidence showed that Tyler had significant physical disabilities and mental health challenges, and that he lacked sufficient understanding to make informed decisions—particularly regarding his ability to live independently.

Second, the probate court did not abuse its discretion by finding that the appointment of a guardian was "necessary as a means of providing continuing care and supervision" for Tyler. See MCL 700.5306(1). At the time of Tyler's admission at Michigan Medicine, Kirsten was acting as his patient advocate and DPOA after those powers were activated. The testimonial evidence from Tyler's medical providers supported the allegations in the guardianship petition that Kirsten acted inconsistently with Tyler's best interests and failed to effectively communicate with the staff at Michigan Medicine. For instance, Dr. Entenman stated that Kirsten was interfering with the medical staff's "ability to continue discharge planning." And Dr. Rosinski testified that Kirsten "sometimes [put] up barriers" to treatment for Tyler and did not respect the medical opinions of Tyler's physicians. Testimony about Kirsten acting inconsistently with Tyler's best interests provided clear and convincing evidence that appointment of a guardian was "necessary as a means of providing continuing care and supervision." As even Kirsten agreed at the evidentiary hearing, a guardianship was "the least restrictive means of providing services and care" for Tyler. Together with the well-supported finding that Tyler was an "incapacitated individual," we conclude that the probate court did not abuse its discretion by appointing coguardians for Tyler.

Tyler also contends that the probate court could not appoint a guardian for medical decisions on his behalf because he already had a patient advocate. To the contrary, the existence of a patient advocate does not preclude the appointment of a guardian. MCL 700.5306(2) states in relevant part, "If the court is aware that an individual has executed a patient advocate designation

-5-

under section 5506,[4] the court shall not grant a guardian any of the same powers that are held by the patient advocate." And MCL 700.5306(5) serves an exception to MCL 700.5306(2), providing that a court may grant powers to a guardian over "treatment decisions that the patient advocate is designated to make" when the "patient advocate is not acting consistent with the ward's best interests." Thus, the statutory scheme for court-appointed guardianships contemplates that a probate court may appoint a guardian for an incapacitated individual who has made a patient advocate designation. As discussed, evidence supported that Kirsten was acting inconsistently with Tyler's best interests by interfering with the recommendations of medical providers at Michigan Medicine. Thus, the probate court had the authority to appoint coguardians, including granting powers to MacEwen Conti as coguardian that Kirsten was designated to make as patient advocate.

Tyler also argues that there was "no factual or legal basis" for the probate court's decision to "remove" Kirsten from her role as Tyler's DPOA. But the probate court did not remove Kirsten as DPOA. After the emergency hearing, the court suspended Kirsten's role. And after appointing coguardians following the evidentiary hearing, the court said that the letters of guardianship would "take priority" over the DPOA. Further, Kirsten's status as DPOA did not preclude her appointment as coguardian. MCL 700.5313(1) provides that a probate court "may appoint a competent person as guardian of a legally incapacitated individual." In choosing the person to serve, MCL 700.5313(2)(d) specifically notes that a guardian may be a person who was named as a "patient advocate or attorney in fact in a durable power of attorney." The Legislature considered that an incapacitated individual may have both a guardianship and DPOA with patient advocate designation in place at the same time. Thus, the probate court did not abuse its discretion by appointing coguardians for Tyler when he already had a patient advocate for medical decision-making.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Colleen A. O'Brien
/s/ James Robert Redford

---

[4] MCL 700.5506 allows an adult of sound mind to designate another adult as a "patient advocate" who may "exercise powers concerning care, custody, and medical or mental health treatment decisions for the individual making the patient advocate designation." MCL 700.5506(1).