# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* GUARDIANSHIP OF ALEXANDER
VICTOR BIBI and NADIA FRANCIS WALLACE,
also known as NADIA BIBI, MINORS.

---

NADIMA BIBI,

        Petitioner-Appellant,

v

LORRAINE WALLACE,

        Respondent-Appellee.

FOR PUBLICATION
May 3, 2016
9:05 a.m.

No. 327159
Wayne Circuit Court
LC No. 14-012529-AV

---

Before: JANSEN, P.J., and SERVITTO and M. J. KELLY, JJ.

PER CURIAM.

In this dispute over guardianship, petitioner, Nadima Bibi, appeals by leave granted[1] the circuit court's appellate opinion and order, which affirmed the probate court's guardianship decision in favor of respondent, Lorraine Wallace. We conclude that the probate court erred when it applied principles of preclusion to Bibi's petition and the circuit court erred when it affirmed the probate court's order. Accordingly, we reverse and remand for further proceedings in the probate court.

## I. BASIC FACTS

This case arises out of a guardianship dispute between the minor wards' grandmothers, which arose following the entry of a consent judgment in an earlier Canadian proceeding. According to the parties, the wards' parents have a long history of substance abuse, transient living, criminal activity, and incarceration for drug offenses. The Canadian proceeding was a "child protection proceeding" instituted by the Windsor-Essex Children's Aid Society (Children's Aid) under Ontario's Child and Family Services Act. The parties to that proceeding,

---

[1] *In re Guardianship of Bibi/Wallace Minors*, unpublished order of the Court of Appeals, entered September 30, 2015 (Docket No. 327159).

-1-

including Bibi, agreed to the consent judgment. Under the terms of the consent judgment, the court "placed" the wards under the joint care and custody of Wallace and the wards' nonparty maternal aunt, "subject to the supervision of [Children's Aid] for a period of six months," and subject to further terms and conditions. The following spring, the wards' father died. Around that same time, their mother was incarcerated in a Florida county jail.

Bibi subsequently petitioned the probate court and asked it to appoint her as the wards' full guardian. In a cross-petition, Wallace also asked to be appointed the wards' guardian. The probate court determined that Bibi's petitions were barred by collateral estoppel and res judicata arising from the Canadian consent judgment. It then granted Wallace's request.

Bibi appealed the probate court's decision in the circuit court and the circuit court affirmed. It determined that the probate court properly applied collateral estoppel to bar Bibi's petition. In the alternative, it agreed with Wallace's argument that Bibi failed to establish grounds for revisiting an existing custody order. Specifically, it stated that Bibi failed to establish proper cause or a change of circumstances sufficient to justify "reopening the guardianship decision of the Ontario Court."

Bibi now appeals in this Court.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

Bibi argues on appeal that the probate and circuit courts erred in applying res judicata and estoppel and erred in applying the relevant law. This Court reviews de novo whether the trial court properly interpreted and applied the relevant statutes. *Kaeb v Kaeb*, 309 Mich App 556, 564; 873 NW2d 319 (2015). This Court also reviews de novo whether the trial court properly applied legal doctrines such as res judicata and collateral estoppel. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). We likewise review de novo issues concerning choice and conflicts of law. *Talmer Bank & Trust v Parikh*, 304 Mich App 373, 383; 848 NW2d 408 (2014), vacated in part on other grounds 497 Mich 857 (2014).

This Court, however, reviews a probate court's dispositional rulings for an abuse of discretion and the factual findings underlying its decision for clear error. *In re Lundy Estate*, 291 Mich App 347, 352; 804 NW2d 773 (2011). A probate court "abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes." *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). A probate court's "finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *In re Estate of Bennett*, 255 Mich App 545, 549; 662 NW2d 772 (2003).

### B. CHOICE OF LAW

We must first determine whether Michigan or Canadian law governs the preclusive effect of the Canadian consent judgment. As a matter of comity, our Courts have recognized the validity of judgments from foreign nations. See *Dart v Dart*, 460 Mich 573; 597 NW2d 82 (1999). Likewise, "a consent judgment is a settlement or a contract that becomes a court

judgment when the judge sanctions it, *Acorn Investment Co v Mich Basic Prop Ins Ass'n*, 495 Mich 338, 354; 852 NW2d 22 (2014) (quotation marks and citation omitted), and, subject to exceptions, "interpretation of contract provisions is governed by the law of the state in which the contract was entered," *Jones v State Farm Mut Auto Ins Co*, 202 Mich App 393, 397; 509 NW2d 829 (1993), mod on other grounds by *Patterson v Kleiman*, 447 Mich 429, 433 n 3; 526 NW2d 879 (1994). One exception is that, "[i]f the court of last resort in the foreign [jurisdiction] has not declared the applicable foreign law with absolute certainty, then Michigan law controls an action instituted in a Michigan forum." *Jones*, 202 Mich App at 398 (quotation marks and citations omitted). This exception applies to a foreign jurisdiction's application of preclusion principles. See *id.* at 398-401. Both collateral estoppel and res judicata are applied in a flexible, discretionary manner under Canadian law. See *Penner v Niagara Regional Police Servs Bd*, 2013 SCC 19 (Can Sup Ct, 2013); see also *R v Mahalingan*, 2008 SCC 63, 109-110 (Can Sup Ct, 2008). Therefore, we shall apply Michigan law to determine whether the Canadian consent judgment should be given preclusive effect. See *Jones*, 202 Mich App at 398.

## C. UNIFORM CHILD-CUSTODY JURISDICTION AND ENFORCEMENT ACT

As a preliminary matter, we shall address the parties' arguments concerning the application of the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA), MCL 722.1101 *et seq.* Under the UCCJEA, a guardianship proceeding qualifies as a "child-custody proceeding," MCL 722.1102(d), and the phrase "child-custody determination" is broadly defined as "a judgment, decree, or other court order providing for legal custody, physical custody, or parenting time with respect to a child," including "a permanent, temporary, initial, and modification order," MCL 722.1102(c). The UCCJEA further defines "physical custody" as "the physical care and supervision of a child." MCL 722.1102(n). Thus, despite the fact that the consent judgment established a temporary placement for the wards, it nevertheless qualifies as a "child-custody determination" regarding "physical custody" under the UCCJEA.

Because the consent judgment qualified as a child-custody determination, after the probate court became aware of the Canadian proceeding, before it could exercise its jurisdiction to issue a guardianship decision, it had to confer with the Ontario court regarding jurisdiction. See *Fisher v Belcher*, 269 Mich App 247, 255; 713 NW2d 6 (2005). After conferring with the Ontario court, the probate court was permitted to exercise its jurisdiction under the UCCJEA if the prior "proceeding [was] terminated or [] stayed by the [foreign] court . . . because a court of this state is a more convenient forum[.]" MCL 722.1206(1); see *Fisher*, 269 Mich App at 255.

At the July 2014 petition hearing, the probate court made a record of the fact that it had conferred with the Ontario court and received "confirmation" that there was "nothing pending over in the [Ontario c]ourt," and that the Ontario court would accordingly terminate its jurisdiction over the wards. Because Bibi, Wallace, and the wards all now reside in Michigan, this state was clearly the more convenient forum. Consequently, after the Ontario court indicated that it had "nothing pending" in the prior action, and that it would terminate its jurisdiction as soon as the probate court assumed jurisdiction, the UCCJEA no longer applied.

## D. COLLATERAL ESTOPPEL

Bibi argues that the probate court erred when it applied collateral estoppel to bar her petition. "Collateral estoppel is a flexible rule intended to relieve parties of multiple litigation, conserve judicial resources, and encourage reliance on adjudication." *Rental Properties Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 529; 866 NW2d 817 (2014). "The doctrine of collateral estoppel must be applied so as to strike a balance between the need to eliminate repetitious and needless litigation and the interest in affording litigants a full and fair adjudication of the issues involved in their claims." *Storey v Meijer, Inc*, 431 Mich 368, 372; 429 NW2d 169 (1988). However, collateral estoppel "does not apply to consent judgments where factual issues are neither tried nor conceded." *Smit v State Farm Mut Auto Ins Co*, 207 Mich App 674, 682; 525 NW2d 528 (1994), citing *Van Pembrook v Zero Mfg Co*, 146 Mich App 87, 103; 380 NW2d 60 (1985). There is no indication that the factual issues involved in the prior proceeding were actually tried or conceded by entry of the consent judgment. On the contrary, the consent judgment was merely an agreement between the parties regarding a temporary placement for the wards under the supervision of Children's Aid.

Additionally, the consent judgment was not a final decision on the merits. By its own terms, the consent judgment was a temporary resolution of the wards' placement "for a period of six months," subject to ongoing review, not a final, conclusive resolution of the child protection proceedings. The issues involved in the prior proceeding also differ from those at issue here. For collateral estoppel to preclude relitigation of an issue, "the ultimate issue to be concluded must be the same as that involved in the first action." *Rental Properties*, 308 Mich App at 529. "The issues must be identical, and not merely similar." *Id.* In the Canadian proceeding, the ultimate issue was what steps were necessary and appropriate under Canadian law to protect the wards from harm, with due consideration of the children's best interests; it did not involve a determination of who would be the best guardian for the children under Michigan's Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.* The issues involved in this petition are not identical to those involved in the Canadian proceeding and, for that reason, the probate court erred when it applied collateral estoppel to bar Bibi's petition.

## E. RES JUDICATA

The probate court similarly erred when it applied res judicata to bar Bibi's petition.[2] "The doctrine of res judicata is intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and encourage reliance on adjudication, that is, to foster the finality of litigation." *Bryan v JPMorgan Chase Bank*, 304 Mich App 708, 715; 848 NW2d 482 (2014) (quotation marks and citation omitted). For res judicata to preclude a claim, three elements must be satisfied: "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair v Michigan*, 470 Mich 105, 121; 680 NW2d 386 (2004).

---

[2] Because we conclude that the probate court erred when it applied collateral estoppel and res judicata, we do not consider Bibi's arguments that the probate court also erred by failing to hold an evidentiary hearing or by failing to state sufficient factual findings to support its decision.

"[T]he burden of proving the applicability of . . . res judicata is on the party asserting it." *Baraga Co v State Tax Comm*, 466 Mich 264, 269; 645 NW2d 13 (2002).

Although "[r]es judicata applies to consent judgments," *Ditmore v Michalik*, 244 Mich App 569, 576; 625 NW2d 462 (2001), the consent judgment at issue here was not a final decision for purposes of res judicata. "To be accorded the conclusive effect of res judicata, the judgment must ordinarily be a firm and stable one, the 'last word' of the rendering court[.]" *Kosiel v Arrow Liquors Corp*, 446 Mich 374, 381; 521 NW2d 531 (1994) (quotation marks and citation omitted). Thus, neither orders granting temporary relief "until [] further order" of the court, *id.*, nor interlocutory orders, *Indiana Ins Co v Auto-Owners Ins Co*, 260 Mich App 662, 671 n 8; 680 NW2d 466 (2004), generally carry preclusive effect under res judicata. The consent judgment was clearly not intended to be the "last word" of the Canadian court with regard to the wards. It was, rather, an agreement between the parties regarding a temporary placement. Indeed, it ordered Wallace and the maternal aunt to maintain a certain residence until "further Order of the Court."

Even if the consent judgment could be characterized as a final decision, "[r]es judicata does not bar a subsequent action between the same parties or their privies when the facts have changed or new facts have developed," *Bennett v Mackinac Bridge Auth (On Remand)*, 289 Mich App 616, 636 n 10; 808 NW2d 471 (2010), or where there has been an intervening change of law that "alters the legal principles on which the court will resolve the subsequent case," *Ditmore*, 244 Mich App at 582. More than a year passed between the entry of the consent judgment and the probate court's decision, during which there were intervening changes of both fact and law. During that time, the wards' father died; their mother was imprisoned; Children's Aid's authority to supervise the wards expired; and, the proper venue for a guardianship or custody changed from Ontario to Michigan. Moreover, according to Bibi's allegations, which Wallace did not contest in the probate court, numerous other material facts had changed: the maternal aunt no longer lived with Wallace to provide joint care and custody for the wards, the relationship between Bibi and Wallace deteriorated significantly—Bibi claimed that Wallace asked her for compensation in exchange for allowing her to visit the children and then ultimately denied her access to them—Wallace became dependent on the aid of others to provide proper care and custody for the wards, Wallace began to permit her autistic son to babysit the wards, Wallace admitted in written correspondence that she was having difficulty caring for the wards, and, despite the mother's addiction issues, Wallace permitted her to live with and care for the wards. Finally, because the wards began to reside in Wayne County, Michigan law eventually displaced Ontario law.

Given the changed circumstances, it was error for the probate court to apply res judicata to bar Bibi's petitions. In guardianship matters involving minor children, our probate courts are charged to "appoint as guardian a person whose appointment serves the minor's welfare," even if that person is a "professional guardian." MCL 700.5212. But instead of basing its guardianship decision on what would serve the wards' welfare, the probate court relied on its erroneous application of preclusion principles, reasoning that, because Bibi's petitions were barred, it could simply grant Wallace's competing petitions. In doing so, the probate court abdicated its statutory authority to decide the issue on the merits. As such, it abused its discretion. See *Loutts v Loutts*, 298 Mich App 21, 24; 826 NW2d 152 (2012). In situations such as this, where our courts are entrusted with safeguarding the interests of minor children, res judicata must be applied with

-5-

great care.  See *Pierson Sand & Gravel, Inc v Keeler Brass Co*, 460 Mich 372, 383; 596 NW2d 153 (1999) ("The goal of res judicata is to promote fairness, not lighten the loads of the state court by precluding suits whenever possible.").

### F.  PROPER CAUSE OR CHANGE IN CIRCUMSTANCES

We next consider the alternate grounds for affirming adopted by the circuit court.  See *Middlebrooks v Wayne Co*, 446 Mich 151, 166 n 41; 521 NW2d 774 (1994).  Bibi argues that the circuit court erred by concluding that her purported failure to establish proper cause or changed circumstances under the Child Custody Act was a valid ground for affirming the probate court's guardianship decision.  Contrary to Wallace's arguments on appeal, MCL 722.27(1)(c) does not apply to guardianship decisions by the probate court; it applies to custody actions, orders, and judgments in "the circuit court."  MCL 722.27(1); see also MCL 722.26(1) (stating that the act applies to "circuit court child custody disputes and actions"); MCL 722.26b(1) and (5) (granting guardians standing to bring custody actions and providing that the probate judge who appointed the guardian should act as the circuit judge for such child custody actions).  The probate court generally has exclusive jurisdiction over a proceeding that concerns a guardianship.  MCL 700.1302(c).  Because there was no custody order from the circuit court involving the wards, the probate court's guardianship order neither could nor did modify "an order or judgment of the circuit court[.]"  Consequently, MCL 722.27(1)(c) did not apply and the circuit court erred when it determined otherwise.

### G.  REASSIGNMENT ON REMAND

Bibi argues that the probate judge made several comments that warrant reassignment on remand.  "The general concern when deciding whether to remand to a different trial judge is whether the appearance of justice will be better served if another judge presides over the case." *Bayati v Bayati*, 264 Mich App 595, 602; 691 NW2d 812 (2004).  In deciding whether to remand to a different judge, this Court considers whether "the original judge would have difficulty in putting aside previously expressed views or findings," whether "reassignment is advisable to preserve the appearance of justice," and whether "reassignment will not entail excessive waste or duplication."  *Id.* at 603.

Bibi contends that the probate judge made comments that suggest a bias against her:

> Just because she [Bibi] has a lot of money and has the ability to access the Courts, doesn't mean that she gets to constantly re-litigate the same issues over and over again.  And that's the way I see it, is that this [action] is a re-litigation of things that took place in 2012 in the Canadian Court system.  And I don't see anything with respect to [] Wallace's care of these children that should cause me to open up this can of worms on this competing guardianship matter. . . .

We agree that the probate judge's comments about Bibi's wealth were inappropriate, but we do not agree that the comments warrant reassignment.  The record does not show that the probate judge would have difficulty in putting aside her previously expressed views or findings. *Id.*  Reassignment is also not necessary to preserve the appearance of justice.  Even though the probate court's application of preclusion principles was erroneous, that fact does not demonstrate

bias or prejudice that would tend to give the appearance of impropriety. See *In re Susser Estate*, 254 Mich App 232, 237; 657 NW2d 147 (2002).

## III. CONCLUSION

We reverse the decisions of the circuit and probate courts and remand this matter to the probate court for consideration of the petitions on the merits.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Deborah A. Servitto
/s/ Michael J. Kelly