*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* AC, Minor.

UNPUBLISHED
May 23, 2024

No. 368338
Oakland Probate Court
LC No. 2015-364158-GM

Before: YATES, P.J., and CAVANAGH and BOONSTRA, JJ.

PER CURIAM.

Petitioner appeals by right the trial court's order terminating her guardianship of a minor child, AC. We affirm.

## I. FACTUAL BACKGROUND

Respondent is AC's mother. Petitioner is a friend of respondent's family.[1] At the time of AC's birth in 2015, respondent was addicted to heroin and incarcerated for drug-related charges. Shortly after AC was born, the trial court appointed petitioners as AC's guardians. Over the next three years, respondent's visitations with AC were inconsistent and respondent only sporadically provided financial support for AC. In 2018, respondent petitioned the court to establish a parenting time schedule. Respondent asserted that she had achieved and maintained sobriety, had a full-time job, and had appropriate housing. In March 2019, the court entered a stipulated order granting respondent visits with AC one day every other week for three hours at a time.

Respondent then attended every scheduled visit with AC. During this time, respondent was employed full-time as a waitress. She lived with her boyfriend in his mother's house. In June 2019, after respondent had consistently attended her visits with AC for three months, the trial court entered a second stipulated parenting-time order that granted respondent visits with AC once a week. Between June 2019 and October 2020, respondent attended about 65% of her visits with

---

[1] AC's great-grandfather was also a petitioner in the proceedings below, but he is not a party to this appeal.

AC, with most of the missed visits being due to her work schedule. In October 2020, respondent agreed to attend joint counseling with AC and to prioritize spending time alone with her.

Between October 2020 and January 2021, respondent's compliance with her visitation schedule improved, and respondent had unsupervised visits with AC. However, respondent failed to attend any counseling sessions with AC during this time. Between February 2021 and April 2021, respondent attended all visits with AC except for one. During this time, respondent also attended three counseling sessions with AC. Respondent remained employed full-time at the same restaurant. In June 2021, the trial court expanded respondent's parenting time schedule to include bi-weekly overnight visits as well as unsupervised weekly visits. The trial court also ordered the Department of Health and Human Services (DHHS) to complete a home study of respondent's residence. DHHS completed the home study and found "no specific concerns."

Between June 2021 and June 2022, respondent's overnight visits with AC were generally consistent. However, respondent missed some joint counseling sessions and weekly afternoon visits due to her work schedule. In June 2022, the court entered a third stipulated parenting-time order that specified that, during the summer, AC would spend "alternating weeks of overnights" with respondent. In August 2022, AC's guardian ad litem (GAL) reported that these visits had gone well and that there were no major concerns. The trial court then ordered that the alternating weekly visitation schedule continue throughout the school year.

In March 2023, respondent filed a petition to terminate AC's guardianship. At a review hearing, respondent stated that she had the ability to care for AC full-time. The GAL reported that AC had stated that she wished to live with respondent but still maintain regular contact with petitioners. The GAL recommended a "major transition" toward termination of the guardianship. Dr. Beth Berman, the therapist who had facilitated the joint counseling between respondent and AC since 2019, testified that respondent and AC had developed a "closer relationship" over recent months. Dr. Berman testified that respondent had been more consistent in attending counseling with AC, and that respondent had "followed through and done what was asked of her." Petitioner argued that a slower transition from termination of the guardianship was needed in order to maintain the bond AC shares with petitioners. The trial court concluded that a transition toward termination of the guardianship was appropriate. The trial court ordered that AC would spend every third weekend of the month with petitioners and the rest of the time with respondent. The court kept the guardianship in place so that it could monitor the transition and it dismissed respondent's petition to terminate the guardianship.

In July 2023, petitioner filed a petition for the continuation of the guardianship. A hearing was held on the petition in August 2023. At the hearing, the GAL reported that all of the parties had complied with the most recent visitation order. The GAL testified that AC was "very apprehensive about what is going to happen moving forward." Further, respondent had reiterated to the GAL that she had "no intention" of keeping AC from either petitioner going forward. The GAL confirmed that respondent was still fully employed and that she had stable housing.

The trial court stated it had already been "preparing for a best interest [sic], and making reviews, and having the guardian ad litem go out and getting testimony" throughout the case. The trial court took judicial notice of "all guardian ad litem reports, all of the testimony and reports and activity [that has] happened in all four of these years." The trial court then went through each

of the best-interests factors outlined in MCL 700.5101(a). The court found that respondent and AC were bonded, that respondent could provide for AC's needs, and that respondent's housing was "stable and satisfactory." Respondent had also demonstrated considerable progress by participating in counseling and successfully completing her court-structured visitation plan. AC had lived with respondent with no complications, and there had been no interruptions to AC's schooling while staying with respondent. Finally, the trial court found that terminating the guardianship would allow respondent and AC to continue to develop their relationship, which respondent had been devoted to rebuilding over the past years.

In addition to finding that these factors weighed in respondent's favor, the trial court acknowledged that "[respondent's] fundamental right to parent" and "her constitutional rights" also favored termination of the guardianship. The trial court then concluded that it was in AC's best interests to terminate the guardianship. The trial court dismissed petitioner's petition to continue the guardianship as moot. The same day, the trial court entered an order terminating AC's guardianship. Petitioner moved for reconsideration, which the trial court denied. This appeal followed.

## II. STANDARD OF REVIEW

We "review[] for an abuse of discretion a probate court's dispositional rulings and review[] for clear error the factual findings underlying a probate court's decision." *In re Bibi*, 315 Mich App 323, 328; 890 NW2d 387 (2016). A trial court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes. *In re Guardianship of Redd*, 321 Mich App 398, 403; 909 NW2d 289 (2017) (citation omitted). "A factual finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake has been made." *Id.* (quotation marks and citation omitted).

## III. ANALYSIS

Petitioner argues that the trial abused its discretion when it (1) focused on respondent's parental rights and not AC's best interests during the final hearing, (2) failed to take any live evidence regarding AC's best interests at the final hearing, (3) applied an incorrect burden of proof regarding the termination of AC's guardianship, and (4) determined that termination of the guardianship was in AC's best interests. We disagree with all of these arguments.

### A. FOCUS ON AC'S BEST INTERESTS

A trial court may terminate the guardianship of a minor child in one of two ways. The trial court may consider termination of a guardianship following a review hearing, see MCL 700.5207(3)(b)(*iii*), or it may consider termination following notice and a hearing on a petition to terminate the guardianship, see MCL 700.5209(2). In either event, the court may only terminate the guardianship if doing so is in the "best interests of the minor." MCL 700.5209(2)(a)-(b). Under MCL 700.5101(a), the best-interest factors to be considered by the court are:

> (i) The love, affection, and other emotional ties existing between the parties involved and the child.

(ii) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue educating and raising the child in the child's religion or creed, if any.

(iii) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(iv) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(v) The permanence, as a family unit, of the existing or proposed custodial home.

(vi) The moral fitness of the parties involved.

(vii) The mental and physical health of the parties involved.

(viii) The child's home, school, and community record.

(ix) The child's reasonable preference, if the court considers the child to be of sufficient age to express a preference.

(x) The party's willingness and ability to facilitate and encourage a close and continuing parent-child relationship between the child and his or her parent or parents.

(xi) Domestic violence regardless of whether the violence is directed against or witnessed by the child.

(xii) Any other factor considered by the court to be relevant to a particular dispute regarding termination of a guardianship, removal of a guardian, or parenting time.

In this case, petitioner argues that the trial court "almost totally [relied] on [respondent's] parental rights during the best[-]interests analysis." We disagree. Upon review of the record, we conclude that the probate court properly considered AC's best interests during the final hearing. While the trial court did acknowledge that respondent's parental rights were a consideration, the court overwhelmingly focused on AC's best interests in its final determination. The trial court made specific findings on every best-interest factor outlined in MCL 700.5101(a), except for the factor regarding domestic violence—and there were no domestic violence allegations in this case and no party raised domestic violence as a concern.

Specifically, the trial court considered the love and affection AC would receive in respondent's care, respondent's continued employment and ability to provide financially for AC, and the fact that AC has integrated well with respondent in her home. Additionally, the trial court considered the stability and safety of respondent's home, respondent's success in complying with her visitation and counseling plans, and the fact that AC had lived with respondent with no

complications. Further, the trial court considered that there had been no interruptions to AC's schooling while in respondent's care and that terminating the guardianship would allow respondent and AC to continue to develop their parent-child relationship.

In addition to finding that these factors were in respondent's favor, the trial court did acknowledge that "[respondent's] fundamental right to parent" and "her constitutional rights" also favored termination of the guardianship. But the record clearly shows that the focus of the court's analysis was on the best-interest factors and how they related to AC. Therefore, we conclude that the probate court did not abuse its discretion and that it properly focused on AC's best interests during the final hearing. *Bibi*, 315 Mich App at 328.

## B. JUDICIAL NOTICE OF FACTS

Under MRE 201(b), a judge is permitted to take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."[2] Further, "[t]here is no doubt but that a circuit court may take judicial notice of the files and records of the court in which it sits." *Snider v Dunn*, 33 Mich App 619, 625; 190 NW2d 299 (1971). The same is also true in a probate court. See, e.g., *In re Stowe*, 162 Mich App 27, 32; 412 NW2d 655 (1987) (concluding that the probate court properly took judicial notice of the original judgment of divorce and introduction of the document at the final hearing was not necessary). Further, "[j]udicial notice may be taken at any stage of the proceeding." MRE 201(e). Additionally, the Michigan Court Rules specifically permit a trial court to review "all relevant and material evidence, including written reports," "at any hearing concerning a guardianship of a minor." MCR 5.404(F)(2).

In this case, the trial court took "judicial notice of all the guardian ad litem reports, all of the testimony and activity [that has] happened in all four of these years." Because the trial court was permitted to take judicial notice of these documents and testimony, the court was not required to take evidence and hear testimony to establish their contents at the final hearing. See *Stowe*, 162 Mich App at 32. Therefore, the trial court did not abuse its discretion when it declined to take live evidence at the final hearing and instead took judicial notice of the previous testimony and guardian ad litem reports presented throughout the case.

## C. BURDEN OF PROOF

Petitioner argues that the trial court incorrectly applied the clear and convincing standard to its determination whether continuation of the guardianship was in AC's best interests. We disagree. MCL 700.5209(2) applies to petitions to terminate guardianships, other than certain parental petitions to terminate a limited guardianship as provided in MCL 700.5209(1). MCL 700.5209(2)(c) permits a trial court to continue a guardianship if "it is established by clear and convincing evidence that the continuation would serve the best interests of the minor." Although the final hearing was occasioned by a petition to *continue* the guardianship rather than a

---

[2] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. We rely on the version of the rules of evidence in effect at the time this matter was decided.

petition to terminate it, the record makes it clear that the trial court was faced with the same decision as it would have in a hearing on a motion to terminate the guardianship—the decision to either terminate or continue AC's guardianship. Under these circumstances, we conclude that the trial court did not err when it required petitioner to show by clear and convincing evidence that continuation of the guardianship was in AC's best interests. *Bibi*, 315 Mich App 323, 328.

## D. AC'S BEST INTERESTS

A trial court may only terminate a guardianship if doing so is in the "best interests of the minor." MCL 700.5209(2)(a)-(b). In this case, the trial court did not abuse its discretion by determining that termination of the guardianship was in AC's best interests.

The trial court found that AC and respondent were bonded and that respondent had demonstrated the capacity to provide AC with love and affection considering her dedication to attending visitations and counseling sessions. Respondent also maintained continued employment throughout the proceedings and had recently been promoted. Therefore, respondent had the ability to provide for AC financially. Further, AC had integrated well with respondent in her home. DHHS and the GAL reported that respondent's home was stable and appropriate for AC. AC had been living with respondent almost exclusively (except for one weekend each month that she spent with petitioners) since April 2023 with no complications or issues. Respondent had also demonstrated a commitment to sobriety throughout the proceedings and confirmed her sobriety at the final hearing.

Additionally, respondent successfully complied with her visitation and counseling plans and demonstrated progress throughout the proceedings. Respondent improved from attending approximately 65% of bi-weekly visitations to caring for AC effectively full-time. She also made considerable progress in attending joint counseling sessions with AC; by the end of the proceedings, respondent was consistent in her attendance. The trial court did not abuse its discretion by holding that termination of the guardianship would provide AC with permanency and stability in respondent's care and allow respondent and AC to continue growing their mother-daughter relationship. Nor did the trial court abuse its discretion or clearly err in finding that respondent had "devoted years to rebuilding her relationship with [AC]" and that termination of the guardianship was in AC's best interests. *Bibi*, 315 Mich App at 328.

Affirmed.

/s/ Christopher P. Yates
/s/ Mark J. Cavanagh
/s/ Mark T. Boonstra

-6-