*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DJB.

SARAH WIESE,

UNPUBLISHED
January 09, 2025
9:15 AM

Petitioner-Appellee,

v

No. 370537
Washtenaw Probate Court
LC No. 24-000024-MI

DJB,

Respondent-Appellant.

Before: N. P. HOOD, P.J., and REDFORD and MALDONADO, JJ.

PER CURIAM.

Respondent appeals by right the probate court's order granting the petition for an involuntary mental-health treatment order. Respondent was committed to no longer than 180 days of combined hospitalization and assisted outpatient treatment, with an initial hospitalization period of 60 days. We affirm.

## I. BASIC FACTS

Respondent suffers from Bipolar I Disorder, and he has a history of severe manic episodes. However, respondent successfully managed his mental illness for approximately 20 years by taking 200 milligrams of Clozapine daily. Respondent maintained employment, housing, and social relationships. He earned a master's degree in social work and managed his diabetes. However, in December 2023, respondent stopped taking his medication and also began taking unprescribed testosterone. After these medication changes and not sleeping for 36 hours, respondent exhibited catatonic symptoms. At the behest of his loved ones, respondent willingly went to the hospital where he was diagnosed with bipolar disorder type one with manic features.

According to the psychiatrist who was treating respondent, respondent was reluctant to start taking his medication again. Respondent also refused to try Lithium or 400 milligrams of his original medication. After 10 weeks of hospitalization in which respondent tried taking some other medications and as well as 350 milligrams of Clozapine, respondent continued to exhibit manic behaviors. These included directing inappropriate, sexual comments and questions to female staff; intrusively offering suggestions about hospital management; having grandiose delusions. These

delusions included beliefs that he could predict the outcomes of football games; was effectively cured of his medical conditions; and was getting younger through reaching "a third level of puberty."

Because respondent's mental health was not improving, a social worker filed a petition for involuntary mental-health treatment in January 2024. At the trial, respondent's psychiatrist testified that respondent's noncompliance with treatment and persistent mania demonstrated impaired judgment that could significantly harm respondent if he were left untreated and unsupervised. The psychiatrist mentioned that these risks of harm included: potential sexual-harassment claims or sexually transmitted diseases because of respondent's inappropriate, sexual comments; potential risky spending and gambling because of respondent's delusions that he could predict football-game outcomes; potential financial instability, which would destabilize his housing and employment; a catatonia relapse, which could be deadly; continued use of unprescribed testosterone, which can cause psychosis in men; and severe physical harm, such as ulcers, infections, and comas because of respondent's diabetes that he could neglect during manic episodes. Accordingly, a jury found by clear and convincing evidence that respondent was a person requiring treatment pursuant to MCL 330.1401(1)(c).[1]

Respondent now appeals as of right, arguing that there was not clear and convincing evidence that respondent's judgment presented a substantial risk of significant harm to himself in the near future. Respondent also argues that the probate court did not properly follow procedures requiring consideration of alternatives to hospitalization, especially because, as respondent alleges, the proposed treatment plan included forced electroconvulsive therapy (ECT).

## II. SUBSTANTIAL RISK OF SIGNIFICANT HARM

Respondent argues that petitioner failed to establish by clear and convincing evidence that he was a person requiring treatment. We disagree.

## A. STANDARDS OF REVIEW

"This Court reviews de novo a matter of statutory interpretation." *In re Tchakarova*, 328 Mich App 172, 182; 936 NW2d 863 (2019). We also review "for an abuse of discretion a probate court's dispositional rulings and reviews for clear error the factual findings underlying a probate court's decision." *Id.* (quotation marks and citation omitted). "A probate court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes." *In re Bibi Guardianship*, 315 Mich App 323, 329; 890 NW2d 387 (2016) (quotation marks and citation omitted). In addition, "a probate court's finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id.* (quotation marks and citation omitted).

---

[1] The jury's verdict form did not specify the statutory provision for its determination. Therefore, the parties discussed on the record which provision would be most appropriate, and the parties agreed that the evidence best supported a decision under MCL 330.1401(1)(c).

B. ANALYSIS

Respondent was found to be a person requiring treatment pursuant to MCL 330.1401(1)(c), which provides that the term includes:

> An individual who has mental illness, whose judgment is so impaired by that mental illness, and whose lack of understanding of the need for treatment has caused him or her to demonstrate an unwillingness to voluntarily participate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration of his or her condition, and presents a substantial risk of significant physical or mental harm to the individual or others.

A "mental illness" is defined as "a substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." MCL 330.1400(g).

In the present case, respondent does not contest that he has a mental illness, as defined in MCL 330.1400(g). Instead, respondent argues that petitioner failed to establish by clear and convincing evidence the remaining elements in MCL 330.1401(1)(c). These elements are (1) that the person's mental illness impairs his or her judgment such that he or she cannot understand that he or she needs treatment, and (2) that this impaired judgment "presents a substantial risk of significant physical or mental harm" to himself or herself or others in the near future. See MCL 330.1401(1)(c). See also *In re Tchakarova*, 328 Mich App at 186.

Regarding impaired judgment, "impaired" means to be "weakened, diminished, or damaged or functioning poorly or inadequately." *McCormick v Carrier*, 487 Mich 180, 197; 795 NW2d 517 (2010) (quotation marks and citation omitted). According to *Black's Law Dictionary*, (12th ed), "judgment" refers to "[t]he mental faculty that causes one to do or say certain things at certain times, such as exercising one's own discretion or advising others; the mental faculty of decision-making." Accordingly, "impaired judgment" refers to a diminished or poorly functioning, cognitive capacity to make decisions. See *id*. See also *McCormick*, 847 Mich at 197. For general evidence of impaired judgment, delusions because of bipolar disorder and bipolar-like disorders can impair an individual's judgment. *Id*. at 185. In the present case, respondent demonstrated delusions of grandeur, including that he could predict the outcomes of major football games, that he was reaching "third puberty," and that his diabetes and other medical conditions were effectively cured. Respondent also generally demonstrated impaired judgment by ceasing to take his medication before being hospitalized and by electing to take unprescribed testosterone. Therefore, for MCL 330.1401(1)(c)'s purposes, respondent demonstrated impaired judgment. See *id*.

Regarding the requirement that the impaired judgment hinders one's ability to understand the need for treatment, respondent demonstrated some level of compliance with treatment in that he willingly went to the hospital and agreed to increase his Clozapine dosage from 200 milligrams to 350 milligrams. However, respondent also testified that he had been stable for about two weeks, and he believed that his mental illness was in complete remission; therefore, he did not need to remain in the hospital. Although respondent testified that he was compliant with every request from respondent's psychiatrist, there is also ample evidence indicating that respondent was

resistant to treatment. For example, respondent's psychiatrist testified that respondent initially refused to take Clozapine again, later refused to comply with a dosage increase to 400 milligrams of Clozapine, and refused to take Lithium. In other words, while respondent was compliant with a certain degree of treatment, he failed to demonstrate an understanding of the extent to which he needed to be treated. Further, respondent insisted that his diagnosis and treatment plan were not explained to him. However, respondent's psychiatrist testified that he and his staff had explained the diagnosis and treatment plan to respondent, but respondent's inability to understand the treatment was part of his mental illness impairing his judgment. Therefore, this evidence of respondent's noncompliance with his treatment plan and the evidence of respondent's testimony regarding his belief that he was cured supports a finding by clear and convincing evidence that respondent's mental illness impaired his judgment such that he failed to understand his need for treatment. See *In re Tchakarova*, 328 Mich App at 185-186; see also MCL 330.1401(1)(c).

For the second element of MCL 330.1401(1)(c), there must be clear and convincing evidence that the individual's impaired judgment "presents a substantial risk of significant physical or mental harm to the individual or others." A history or pattern of risky or dangerous behaviors can support a conclusion of general risk of harm under MCL 330.1401(1). *In re Tchakarova*, 328 Mich App at 183-184. In the present case, respondent argues that petitioner's evidence regarding risk of harm was speculative and not "a *substantial* risk of *significant*" harm. Respondent's argument on this point is persuasive regarding the testimony from respondent's psychiatrist about potential gambling, sexually transmitted disease (STD) contractions, sexual-harassment claims, reckless spending, and job and housing insecurities. However, respondent fails to address the evidence concerning his diabetic condition, his possible catatonic relapse, and his unprescribed use of testosterone. As respondent's psychiatrist testified, respondent believed that he was effectively cured of all his medical conditions, including his diabetes. There was testimony that mismanagement or failure to recognize and manage diabetes can cause ulcers, infections, nerve damage, and diabetic comas. In fact, a diabetic coma is an acute risk that can occur after only a short time of mismanagement. These are plainly substantial risks of significant physical harm to respondent that would likely occur in his near future if his mental illness remained untreated. See MCL 330.1401(1)(c). Respondent's psychiatrist also testified that, if left untreated, a deterioration in respondent's manic state could include a relapse of catatonia. Catatonia presents a risk of significant harm because it is a decreased state of being able to address basic needs. In fact, catatonia can cause people to stop eating and drinking as though they were "frozen." Catatonia is also a substantial risk for respondent's near future because he has a history of catatonia. Similarly, respondent's unprescribed usage of testosterone presents a substantial risk of significant harm because testosterone is known to cause psychosis in men, and if untreated, respondent's persistent manic state could prompt him to use testosterone again. Respondent testified that he used the testosterone because he is "an avid weightlifter." If respondent is, or thinks he is, an avid weightlifter, then it is reasonable to conclude that if he remains manic, he will use testosterone again in the near future. In sum, the evidence concerning respondent's diabetes, catatonia, and testosterone-usage all satisfy the statutory element that respondent's impaired judgment presented a substantial risk of significant physical harm to himself in the near future. See *In re MAT*, ___ Mich App at ___, ___; ___ NW3d ___ (2024) (Docket No. 369255); slip op at 7-8; see also MCL 330.1401(1)(c).

For these reasons, petitioner established by clear and convincing evidence the necessary requirements under MCL 330.1401(1)(c). Therefore, the probate court did not err by issuing an order in which respondent was found to be a person requiring treatment.

### III. PROCEDURES FOR ORDERING HOSPITALIZATION AND ECT

Respondent argues that the trial court erred by failing to follow the proper procedures and by failing to consider less invasive alternatives. We disagree.

Statutory interpretation and issues of due process are reviewed de novo. *In re MAT*, ___ Mich App at ___; slip op at 2; *In re Jestila*, 345 Mich App 353, 355 n 3; 5 NW3d 362 (2023).

### A. PROCEDURES FOR ORDERING HOSPITALIZATION

MCR 5.741(A) provides that "[b]efore ordering a course of involuntary mental health treatment or of care and treatment at a center, the court must receive a written report or oral testimony describing the type and extent of treatment that will be provided to the individual and the appropriateness and adequacy of this treatment." Moreover, MCL 330.1469a(1) provides that a probate court "must review a report on alternatives to hospitalization . . . before the court issues the order." The probate court must then do all the following:

> (a) Determine whether a treatment program that is an alternative to hospitalization or that follows an initial period of hospitalization is adequate to meet the individual's treatment needs and is sufficient to prevent harm that the individual may inflict upon himself or herself or upon others within the near future.
>
> (b) Determine whether there is an agency or mental health professional available to supervise the individual's treatment program.
>
> (c) Inquire as to the individual's desires regarding alternatives to hospitalization. [MCL 330.1469a(1).]

The probate court must order assisted outpatient treatment or combined hospitalization and outpatient treatment if a treatment plan presents an adequate alternative to hospitalization, as enumerated in MCL 330.1469a(1)(a). MCL 330.1469a(2). In this case, "[t]he order may provide that if an individual refuses to comply with a psychiatrist's order to return to the hospital, a peace officer must take the individual into protective custody." MCL 330.1469a(2).

"If the court orders assisted outpatient treatment as the alternative to hospitalization, the order must be consistent with the provisions of [MCL 330.1468(2)(d).]" MCL 330.1469a(3). MCL 330.1468(2)(d) provides that the probate court is required to "[o]rder the individual to receive assisted outpatient treatment through a community mental health services program, or other entity as designated by the department, capable of providing the necessary treatment and services to assist the individual to live and function in the community as specified in the order." MCL 330.1468(2)(d). The probate court may also include in the order a case-management plan with specific case-management service requirements such as medication and therapy. MCL 330.1468(2)(d). Additionally, before issuing an order for hospitalization, courts must

"inquire into the adequacy of treatment to be provided to the individual by the hospital. Hospitalization shall not be ordered unless the hospital in which the individual is to be hospitalized can provide him [or her] with treatment which is adequate and appropriate to his [or her] condition." MCL 330.1470.

Respondent's argument that the probate court failed to consider alternatives and whether respondent's recommended treatment would be beneficial for him compared to alternatives is without merit. First, the probate court followed the procedures laid out in MCR 5.741(A) because it received both a written report from a licensed social worker and oral testimony from respondent's psychiatrist describing the type, extent, appropriateness, and adequacy of respondent's proposed treatment. The social worker drew his recommendation from the lower court records, two conferences with respondent, and coordination with hospital staff. From his review of these resources, the social worker noted that respondent's psychosis persisted despite the usage of some medications. Respondent "recently being described as a little resistant to treatment" prompted the social worker to recommend combined hospitalization and outpatient treatment. Respondent's psychiatrist recommended hospitalization for the purpose of raising respondent's Clozapine dosage to 400 milligrams or having respondent try Lithium. Respondent's psychiatrist testified that "[t]he question is if that doesn't work then the next step would be ECT," used briefly with the goal of breaking respondent's psychotic state. Therefore, the probate court adhered to the statutory requirement by receiving both a written report and oral testimony about respondent's proposed treatment plan. See MCR 5.741(A).

Second, the probate court followed proper procedures in MCL 330.1469a(1), which first requires the probate court to review a report on alternatives to hospitalization. The record indicates that the probate court complied with this requirement because it received the social worker's report and heard the testimony from respondent's psychiatrist, which is acceptable pursuant to MCR 5.741(A). See MCL 330.1469a(1). Because judges are presumed to know the relevant law, they are also presumed to follow the law, absent evidence to the contrary. See *Auto Owners Ins Co v Keizer-Morris, Inc*, 284 Mich App 610, 612-613; 773 NW2d 267 (2009) (stating that the lack of a detailed explanation for a court's decision does not demonstrate a failure to understand the law). Moreover, trial courts are not required to recite on the record every detail of reviews or considerations that it made. See *In re Williams*, 333 Mich App 172, 183; 958 NW2d 629 (2020) ("A trial court is generally not obligated to articulate extensive findings regarding every conceivable detail."). Additionally, the court entered an order requiring a report on alternative treatments on January 17, 2024, and this report was completed on January 26. This being in the record lends further support to the conclusion that the court properly considered alternatives to hospitalization. Therefore, the probate court's lack of commentary about specific review of the social worker's report does not detract from the presumption that the probate court knew and followed MCL 330.1469a(1)'s requirements. See *id.*

Third, the probate court adhered to MCL 330.1469a(1)(a) because the probate court found that there was "an available treatment program that is an alternative to hospitalization or that follows an initial period of hospitalization adequate to meet the individual's treatment needs and is sufficient to prevent harm that the individual may inflict upon self or others within the near future." The probate court's order also indicated that the probate court found that Trinity Health "or any approved hospital can provide treatment, which is adequate and appropriate to the individual's condition," thereby satisfying this statutory requirement. See MCL 330.1469a(1)(b).

Fourth, by hearing testimony from respondent and respondent's sister, the probate court presumably inquired as to respondent's preferences regarding treatment. See *Auto Owners Ins Co*, 284 Mich App at 612-613. Again, the probate court's lack of commentary about respondent's preferences does not detract from the presumption that the probate court knew and followed MCL 330.1469a(1)'s requirements. See *In re Williams*, 333 Mich App at 183. Furthermore, the probate court's order was for combined hospitalization *and* outpatient treatment, which supports a conclusion that the probate court inquired about respondent's preferences for no hospitalization by ordering a compromise of some hospitalization and outpatient treatment. Therefore, the probate court properly adhered to these statutory requirements regarding respondent's treatment plan. See MCL 330.1469a(1).

Fifth, the probate court's order complied with MCL 330.1469a(2) and MCL 330.1469a(3) because it ordered combined hospitalization and outpatient treatment and because it assigned Washtenaw County Community Mental Health as the supervisor of respondent's assisted outpatient treatment services. See MCL 330.1468(2)(d).

Finally, the probate court "inquir[ed] into the adequacy of treatment to be provided to the individual by the hospital," and it found that "the hospital in which the individual is to be hospitalized [could] provide him with treatment which is adequate and appropriate to his condition." MCL 330.1470. The record supports this conclusion because the probate court received the social worker's report in which the social worker stated that he believed that the hospital to which respondent would be admitted could "provide its prescribed treatment program appropriately and adequately." The social worker offered this opinion because he reported that the hospital had the capacity to prescribe and monitor medications, as well as "[the capacity to] establish a person[-]centered treatment plan." Respondent's psychiatrist also testified that his facility was equipped to provide his recommended treatments. Therefore, by considering this report and testimony, the probate court satisfied these statutory requirements as well. See MCL 330.1470.

## B. ELECTROCONVULSIVE THERAPY

Respondent grounds much of his arguments in the claim that the ordered treatment included forced ECT; however, MCL 330.1717 prohibits subjecting an individual to ECT unless consent is obtained from the appropriate authority; in this case, that person is respondent's sister because she has medical power of attorney. See MCL 330.1717(1)(d). A court order cannot override, extend, or ignore statutory requirements. See, e.g., *In re Certified Questions From US Dist*, 506 Mich 332, 356 n 16; 958 NW2d 1 (2020); *In re SB*, ___ Mich App ___, ___; ___ NW3d ___ (2004) (Docket No. 367014); slip op at 20-21. Because respondent's sister clearly testified that she and respondent opposed ECT and would not consent to it, the probate court's order could not force respondent to receive ECT. See *In re Certified Questions*, 506 Mich at 356 n 16. Therefore, the probate court's order requiring that respondent comply with treatment recommendations did not supersede

respondent's statutory right to withhold consent to ECT; accordingly, respondent would not be forced to receive ECT for as long as consent is withheld. See *id*.; see also MCL 330.1717(1).[2]

For these reasons, the probate court did not err by ordering respondent to a combination of hospitalization and assisted outpatient treatment.[3]

Affirmed.

/s/ Noah P. Hood
/s/ James Robert Redford
/s/ Allie Greenleaf Maldonado

---

[2] Additionally, regarding ECT; it is not clear from the record that ECT had been ordered by any heath care provider. Rather, the record appears to indicate, ECT was discussed or mentioned as a possible *future* treatment option if hospitalization and out-patient treatments were not successful. If at that juncture it were to be prescribed, as indicated above, consent as required by the applicable Michigan statutes would first have to be obtained.

[3] Respondent also makes a cursory due process argument. Respondent suggests that his history of successfully managing his illness necessitates a finding that the court-ordered treatment violates his right to choose his own medical care. Respondent essentially rehashes his other arguments under a different label. As discussed, petitioner established that respondent was a person requiring treatment, and the court followed all the necessary procedures. Respondent does not suggest that the legal framework within which these cases operate fails to adequately protect the rights of people to make their own health care decisions. Therefore, we reject his attempt to place a due process label on the arguments already discussed.