*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Guardianship of VA.

| | |
|---|---|
| KIRSTEN BOTSFORD, Guardian for VA, a legally incapacitated person, | UNPUBLISHED<br>April 09, 2025<br>2:45 PM |
| Appellee, | |
| v | No. 372952<br>Mason Probate Court |
| KARI RANKIN and GREGORY RANKIN, | LC No. 23-000186-GA |
| Appellants. | |

Before: GADOLA, C.J., and WALLACE and ACKERMAN, JJ.

PER CURIAM.

Appellants, Kari and Gregory Rankin ("the Rankins"), appeal as of right the probate court's denial of their petition to modify the guardianship over the incapacitated individual, VA. We affirm.

## I. FACTS AND PROCEEDINGS

VA is the mother of five adult daughters. Kirsten Botsford, who lives in Michigan, and Kari Rankin, who lives in South Carolina, are two of VA's daughters.[1] Botsford filed a petition with the probate court to be appointed VA's guardian pursuant to the Estates and Protected Individuals Code (EPIC), MCL 700.5301 *et seq*. VA was 92 years old and had been diagnosed with dementia. At the time of the petition, Botsford was already named as VA's attorney-in-fact pursuant to a general durable power of attorney and patient advocate pursuant to a durable power of attorney for health care, and VA was residing in an assisted-living facility.

---

[1] Botsford is the only daughter of VA who lives in Michigan (Kari lives in South Carolina, one of VA's daughters lives in Colorado, and two of VA's daughters live in Indiana).

In the summer of 2023, the Rankins took VA out of the assisted-living facility in Michigan without notice to her patient advocate or the facility and inappropriately moved VA to their home in South Carolina for three months. While there, the Rankins allegedly restricted VA's communication with the rest of the family and transferred approximately $41,000 of VA's money to a bank account that they managed. The Rankins also had VA execute a new power of attorney, despite also filing a competing petition to be appointed VA's guardian, which necessarily required an admission that VA was incapacitated and in need of a guardianship (pursuant to EPIC), which contradicted the assertion that VA possessed the capacity to execute a new power of attorney at the time. In order to compel the physical return of VA, Botsford was forced to seek legal action, which resulted in an ex parte order being entered by the probate court in Mason County, and entry of an order enforcing that judgment by a court in South Carolina, after which VA was returned in January 2024. The legal fees expended in securing VA's return depleted VA's finances and caused VA to no longer be able to afford to remain in the assisted-living facility, which forced Botsford to seek placement for VA at a facility that accepted Medicaid. The Rankins initially filed objections to the probate court's ex parte order (in addition to their competing petition for guardianship), but in January 2024 the parties stipulated that VA was an incapacitated individual, pursuant to EPIC, and that Botsford be appointed VA's guardian, which resolved their competing petitions.

In June 2024 the Rankins proposed to the family that VA move to their residence in South Carolina, rather than move VA to a Medicaid facility. VA's family could not come to a consensus on the matter, and the Rankins filed a petition to modify VA's guardianship in July 2024, which sought to have VA move to their residence in South Carolina and to have VA's social security payments assigned to them.

Following briefing and evidentiary hearings, the Rankins presented little evidence establishing that Botsford was unsuitable in her duties as VA's guardian. Instead, the Rankins argued that VA's long-standing desire was to be cared for by family and friends, as opposed to placement in a care facility, and that Botsford was acting out of self-interest and anger at her sister, rather than acting in the best interests of the ward. They also objected to the sizable amount of money that Botsford expended on legal fees, which was spent in order to secure the return of VA after the Rankins improperly removed VA to South Carolina, and argued that the expenditure of these funds would necessitate VA moving out of the assisted-living facility, which did not accept Medicaid insurance. They further argued that Botsford was taking an irrational position as to whether the Rankins would provide family with future access to the ward, that she was fixated on having the ward close to her geographically, that she failed to properly plan for VA's finances, such that she might be disqualified from eligibility for Medicaid, and that both facilities to which Botsford was considering moving VA had formal complaints lodged against them. The lawyer guardian ad litem in this matter recommended that Botsford remain VA's guardian and opined that the Rankins' prior actions would make them unsuitable as VA's guardians.

In October 2024 the probate court denied the Rankins' petition, finding that they had not established by a preponderance of the evidence that Botsford was unsuitable as VA's guardian; instead, the probate court found that the evidence established that Botsford had appropriately provided for VA's care, custody, and control, and was acting in VA's best interests. The Rankins now appeal.

## II. STANDARD OF REVIEW

"We review the probate court's dispositional rulings for an abuse of discretion." *In re Redd Guardianship*, 321 Mich App 398, 403; 909 NW2d 289 (2017). "A probate court 'abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes.' " *In re Bibi Guardianship*, 315 Mich App 323, 329; 890 NW2d 387 (2016) (quotation marks and citation omitted). "We review the probate court's findings of fact for clear error." *In re Redd Guardianship*, 321 Mich App at 403. "A factual finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted). "We review de novo any statutory or constitutional interpretation by the probate court." *Id*. at 404.

## III. ANALYSIS

On appeal, the Rankins argue that Botsford is no longer suitable as guardian because she refused to allow VA to move to the Rankins' home; therefore, the probate court abused its discretion.

EPIC provides for the appointment of guardians for incapacitated individuals. Any person interested in the individual's welfare may file a petition seeking a finding of incapacity and the appointment of a guardian. MCL 700.5303(1). Following contested petitions, the parties in this matter stipulated to VA's incapacity and to the appointment of Botsford as guardian, thereby stipulating to Botsford's willingness and suitability to the satisfaction of MCL 700.5313(2). Furthermore, Botsford was listed as VA's attorney-in-fact under a durable power of attorney and patient advocate under a durable power of attorney for health care, placing her ahead of the Rankins in priority for appointing a guardian under MCL 700.5313(2)(c) and (d).

The process for attempting to remove a guardian is specifically provided for in EPIC and requires the filing of a petition by an interested party, pursuant to MCL 700.5310(2). But "to remove a guardian, under MCL 700.5310, the probate court must find that the guardian is no longer suitable or willing to serve." *In re Redd Guardianship*, 321 Mich App at 406-407. In order to remove a guardian that is otherwise willing to continue in his or her duties, it must be established by a preponderance of the evidence that the guardian is not qualified or able to provide for the person's care, custody, and control. *Id*. at 410. The moving party has the burden of proving that the guardian is unsuitable. *Id*. at 411-412.

The Rankins presented evidence of their preference to have VA live with them, citing to VA's alleged previously asserted wish to live with family, as well as historical familial conflicts, but none of that evidence supported their assertion that Botsford was unsuitable to act as guardian.

Although the Rankins cite to this Court's decision in *Redd*, in support of their appeal, the facts of *Redd* are readily distinguishable from the present case. The guardianship proceedings in *Redd* involved an intra-family dispute that had been highly contentious for years, with wide disagreements by various members of the family concerning the ward in that matter. The petitioner alleged that the guardian was not allowing the ward to see family members, and was not facilitating visitation with the ward's family members, despite the fact that one of the family members, Nicole, had opened her home to all of the family in order to facilitate such visitation. Because providing

-3-

for the ward's social well-being was the guardian's responsibility, and because the record amply supported the assertion that the guardian in that case was actively impeding the ward from socializing with family members, this Court held the probate court's removal of the guardian and replacing him with Nicole was not an abuse of discretion.

In the present case, there was likewise a years-long contentious intra-family dispute, but unlike in *Redd*, where the guardian was impeding the ward's access to other family members, the evidence in this case suggests that the parties who moved the probate court to modify the guardianship, the Rankins, were the family members who had a history of impeding VA from socializing with family members. The Rankins inappropriately removed VA from her residence in Michigan and then limited her communication, at times, with some of her daughters. In contrast, there was no evidence that Botsford limited communications between VA and her family. In fact, the evidence at the hearing to modify the guardianship demonstrated that VA's daughters had uninterrupted telephone access to her, except during times when the battery on her cellphone needed to be recharged. In addition, at the time of the hearing on the Rankins' petition to modify VA's guardianship, the ward's daughters who lived in Indiana and Colorado had all recently visited her, in person. So, unlike in *Redd*, where the guardian was actively impeding the ability of the ward to socialize with family, the guardian in this case has allowed VA to communicate freely with her family.

The evidence presented at the hearing otherwise established the degree to which Botsford had attentively carried out her duties as VA's guardian. She had successfully enrolled the ward in the Medicaid insurance program and had admitted her to an extended care facility located about an hour from Botsford's residence. The GAL testified at the hearing that the ward is now receiving twenty-four-hour per day care, as required, and that it was her recommendation that the guardianship be continued. With regard to the argument made by the Rankins—that Botsford had depleted the ward's funds with the payment of legal fees, necessitating her move from the assisted-living facility—the record demonstrates that the Rankins' actions, in inappropriately removing VA to South Carolina without notice to her attorney-in-fact/patient advocate was the actual cause of the depletion of VA's finances, due to the resulting legal fees.

Based on this record, we cannot find that the probate court clearly erred when it found that the Rankins failed to establish, by a preponderance of the evidence, that Botsford was not qualified or was unable to provide for VA's care, custody, and control.[2] Therefore, the probate court did

---

[2] We note that, despite significant disagreements between VA's daughters regarding her ongoing care, the record strongly suggests that all five of the daughters want what they each respectively believe is best for their mother.

not abuse its discretion when it denied the Rankins' petition to modify the guardianship in this matter.

Affirmed.

/s/ Michael F. Gadola
/s/ Randy J. Wallace
/s/ Matthew S. Ackerman