*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Guardianship of JO

Michael Mishic

       Petitioner-Appellee,

and

Cheyenne Oakley,

       Appellee,

v

Korene Verona,

       Appellant,

UNPUBLISHED
April 10, 2025
3:34 PM

No. 372512
Midland Probate Court
LC No. 23-003332-LG

Before: MURRAY, P.J., and M. J. KELLY and N. P. HOOD, JJ.

PER CURIAM.

In this guardianship case, Korene Verona appeals by right the probate court's order terminating her limited guardianship of JO, a minor child. On appeal, Verona argues that the probate court abused its discretion by terminating the limited guardianship because JO's mother, Cheyenne Oakley, failed to substantially comply with the limited guardianship placement plan, and terminating the limited guardianship was contrary to JO's best interests. Because the probate court did not clearly err by finding that Oakley substantially complied with the limited guardianship placement plan under MCL 700.5209(1), we disagree and affirm.

## I. BACKGROUND

This case began in March 2023, when Verona petitioned the probate court to become JO's limited guardian. The probate court appointed a guardian ad litem (GAL) for JO, who prepared

-1-

and filed a report regarding the petition. The GAL reported that Oakley experienced postpartum depression after JO's birth and consequently found it difficult to care for JO and his older brother. Oakley had full-time employment in Mackinaw City, Michigan and lived in income-based housing in Cheboygan, Michigan. In September 2022, Oakley executed a power of attorney that authorized Verona to house and care for JO.[1] Verona lived with her husband in Mount Pleasant, Michigan. The GAL reported that Verona and her husband were financially secure, and Verona's remote work allowed her to care for JO. The GAL opined that "all involved want what's best for" JO.

In April 2023, the probate court granted Verona's petition and appointed her as JO's limited guardian. It issued letters of guardianship and adopted a limited guardianship placement plan. Under the plan, Oakley agreed to visit JO at least one time each week and attend arranged outings with JO at least one time each month. Oakley was responsible for her own transportation when visiting JO and agreed to continue funding his health insurance coverage. Oakley also agreed to remain "gainfully employed."

In November 2023, the probate court transferred venue from the Isabella Probate Court to the Midland Probate Court on its own initiative. It appears from context that the probate court transferred venue because Verona moved from Mount Pleasant to Midland, Michigan. It issued updated letters of guardianship, which reflected that Verona moved to Midland.

In May 2024, Verona prepared and filed an annual report regarding JO's condition. Verona described JO's living arrangement as "excellent[]" and opined that he was content with his living arrangement. She also described JO's physical health as "excellent." She reported that Oakley did not comply with the limited guardianship placement plan and had only visited JO on seven occasions since April 2023. She further stated that the limited guardianship should continue because JO was well-adjusted and shared a bond with his "guardian family."

In June 2024, the probate court appointed licensed social worker Dawn McMillan to review the limited guardianship. It directed McMillan to prepare and file a report regarding JO's best interests in light of the factors set forth in MCL 700.5101(a)(*i*) to (*xii*). McMillan, in turn, reported that Oakley failed to substantially comply with the limited guardianship placement plan by regularly visiting JO. McMillan also reported that Verona shared a bond with JO, met all of his needs, and provided an environment that was safe, stable, and healthy. McMillan recommended that the probate court continue the limited guardianship without modification.

In July 2024, Oakley petitioned the probate court to terminate the limited guardianship. The probate court appointed a new GAL for JO, who prepared and filed a report regarding the petition. The GAL reported that JO was 27 months old and at an age where development and bonding with Oakley was crucial. The GAL exchanged e-mails with Oakley, who stated that Verona did not allow her to FaceTime, or have video calls, with JO, did not allow her to go anywhere with JO alone, and never brought JO to her home. The GAL stated that the limited guardianship was not meant to be a permanent solution, and reunification was always the goal. He

---

[1] The GAL described Verona as Oakley's mentor. Verona was the director of Life Choices, which from context appears to refer to a pregnancy resource center.

recommended that the probate court terminate the limited guardianship, provided that Oakley provide proof of suitable housing and sufficient income to support JO.

In September 2024, the probate court held a hearing regarding Oakley's petition to terminate the limited guardianship. During the hearing, the GAL supplemented his written report. He stated that Oakley sent him proof of her income, housing, and car insurance. He also stated that Oakley's sister-in-law, who he viewed as a credible source of information, sent him a letter in support of Oakley's termination petition. She stated that Oakley had supportive family members that lived near her home and had matured since the limited guardianship began. The GAL acknowledged that Oakley did not fully comply with the limited guardianship placement plan but opined that she made meaningful progress. He reiterated that JO was at an age where development and bonding with Oakley was crucial and again recommended that the probate court terminate the limited guardianship.

Verona objected to Oakley's termination petition. She testified that Oakley visited JO four times in 2024, and during those visits, Oakley did not take part in typical parenting responsibilities such as feeding or changing diapers. She stated that JO had lived in her home for nearly two years and opined that terminating the limited guardianship would be traumatic for him. Verona's husband likewise testified that Oakley visited JO only "a dozen" times during the nearly two years that JO lived in their home. He believed that Oakley failed to maintain stable employment and could not afford the cost of travel to visit JO. He stated that JO was bonded to Verona and himself and opined that terminating the limited guardianship would be traumatic for him.

For her part, Oakley testified that she previously worked a minimum wage job and found it difficult to afford visiting JO on a weekly basis. She recently lost her job and began working as a Door Dash (food delivery) driver. She was looking for a new job and had multiple interviews scheduled during the coming week. She maintained stable, income-based housing for the preceding two years. She had a driver's license and car insurance. She also received Medicaid benefits. She wished to have JO back in her home so that they could create a "whole bond." She stated that Verona did not allow her to take part in celebrations for holidays or JO's birthday. She also stated that Verona did not give her the opportunity to change JO's diapers during her visits.

After testimony concluded, the probate court concluded that the limited guardianship should be terminated. It explained:

So, if I had been at your first hearing, I would have talked about how difficult it is to terminate limited guardianships, because it is. . . . [JO] is bonded, and a limited guardianship is a way of helping with someone who is unable to take care of a child. But they need to end.

And the -- the primacy of a parent's right is -- is very much there by way of statute. And it is an obligation of the Court to make sure that children are not forever taken by way of -- of what should be temporary types of situations.

So, [Oakley] has appropriately petitioned at a time that -- maybe it should have been a year ago, but it wasn't, so the bond that the Verona[]s have is very,

very real. And it needs to be respected by [Oakley]. But I am terminating this. It is time to move on and it is -- it is time to make sure that [JO] understands who his mother is.

The probate court then entered an order terminating the limited guardianship.

The following day, Verona authored a letter that she filed in the probate court. She requested that the probate court stay its order terminating the limited guardianship to consider whether the GAL performed an adequate investigation, whether Oakley complied with the limited guardianship placement plan, and whether terminating the limited guardianship served JO's best interests.

The probate court addressed Verona's letter as if it were a motion and denied her requested relief. It concluded that the GAL conducted a thorough investigation and was forthcoming throughout the proceedings. It further concluded that Oakley substantially complied with the limited guardianship placement plan, and termination served JO's best interests. It explained:

> Although not stated on the record, it was apparent to this Court that the visitation was a barrier because of the distance of Biological Mother and the trappings put on the visitations for the Child by the Limited Guardian. Biological Mother has been gainfully employed and is currently on Medicaid so income is sufficient to support the family. Biological mother has appropriate housing, insurance and supports. This Court finds there has been substantial compliance with the Limited Guardianship Plan.
>
> * * *
>
> It is definitely in the best interest of this Child to know his Mother and be reunited as quickly as possible. This is not a de facto adoption and there has been a significant amount of time passing without proper parenting time facilitation in this Court's opinion. There was an attempt by this Court to order the stepped parenting time but it became amply apparent that the Limited Guardian was going to put barriers to that plan and therefore the turning over to Biological Mother was ordered . . . .

This appeal followed.

## II. STANDARDS OF REVIEW

We review for an abuse of discretion a probate court's dispositional rulings and review for clear error the factual findings underlying a probate court's decision. *In re Bibi Guardianship*, 315 Mich App 323, 328; 890 NW2d 387 (2016). "A probate court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes." *Id.* at 329 (quotation marks and citation omitted). "A probate court's finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id.* (quotation marks and citation omitted). "To the extent that resolution of this issue involves statutory interpretation, we review de novo whether

-4-

the [probate] court properly interpreted and applied the relevant statutes." *Wiesner v Washtenaw Co Community Mental Health*, 340 Mich App 572, 580; 986 NW2d 629 (2022).

## III.  LAW AND ANALYSIS

On appeal, Verona argues that the probate court abused its discretion by terminating the limited guardianship because Oakley failed to substantially comply with the limited guardianship placement plan, and terminating the limited guardianship was contrary to JO's best interests.  We disagree.

The Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*., governs the establishment and termination of minor guardianships in Michigan.  See MCL 700.5201.  It permits a minor's parent to petition a probate court to terminate a limited guardianship.  See MCL 700.5208(1)(a).  If a minor's parent does so, the probate court may do one or more of the following:

> (a) Order the family independence agency or a court employee or agent to conduct an investigation and file a written report of the investigation regarding the best interests of the minor or give testimony concerning the investigation.

> (b) Utilize the community resources in behavioral sciences and other professions in the investigation and study of the best interests of the minor and consider their recommendations for the disposition of the petition.

> (c) Appoint a guardian ad litem or attorney to represent the minor.

> (d) Take any other action considered necessary in a particular case.  [MCL 700.5208(2)(a) through (d).]

"After notice and hearing on a petition under [MCL 700.5208] to terminate a limited guardianship, the court shall terminate the limited guardianship if it determines that the minor's parent or parents have substantially complied with the limited guardianship placement plan."  MCL 700.5209(1). If a minor's parent petitions a probate court to terminate a limited guardianship and MCL 700.5209(1) does not apply, the probate court may "[t]erminate the guardianship if the court determines that it is in the best interests of the minor . . . ."  MCL 700.5209(2)(a).

MCL 700.5209(1) does not define "substantial compliance" related to a limited guardianship placement plan.  We therefore apply the plain and ordinary meaning and may consult dictionary definitions to determine the meaning of the phrase.  See *Zenti v Marquette*, 329 Mich App 258, 266; 942 NW2d 102 (2019).  Merriam-Webster's Collegiate Dictionary (11th ed) defines "substantial," in relevant part, as "consisting of or relating to substance" or "being largely but not wholly that which is specified[.]"  Substantial compliance under MCL 700.5209(1) therefore refers to being largely but not wholly in compliance with a limited guardianship placement plan.

Here, the probate court did not clearly err by finding that Oakley substantially complied with the limited guardianship placement plan under MCL 700.5209(1).  Oakley did not visit JO on a weekly basis as the limited guardianship placement plan required.  However, the record reflects that Oakley's failure to comply with this aspect of the limited guardianship placement plan was due in large part to the distance between her home in Cheboygan and Verona's home in

Midland. Although Oakley did not visit JO on a weekly basis, she consistently visited him throughout the limited guardianship. Oakley maintained stable, income-based housing, car insurance, and Medicaid benefits for herself and her children. Although Oakley lost her job shortly before the hearing regarding her termination petition, she maintained stable employment throughout much of the limited guardianship. Oakley also testified that she maintained a source of income after losing her job by working as a Door Dash driver and had multiple upcoming job interviews. Oakley's sister-in-law also testified that she had supportive family members that lived near her home and had matured since the limited guardianship began. In light of the record evidence, the probate court did not clearly err by finding that Oakley substantially complied with the limited guardianship placement plan under MCL 700.5209(1). To the extent that Verona challenges Oakley's credibility in support of her appellate arguments, we defer to the probate court's credibility determinations. See *In re Guardianship of Redd*, 321 Mich App 398, 412; 909 NW2d 289 (2017).

Verona also contends that the probate court was required to determine whether terminating the limited guardianship would serve JO's best interests under MCL 700.5209. We disagree. MCL 700.5209(2) permits a probate court to terminate a limited guardianship if it determines that the minor's best interests would be served by doing so. It applies only if MCL 700.5209(1), which requires a probate court to terminate a limited guardianship if it determines that the minor's parent substantially complied with the limited guardianship placement plan, does not apply. In other words, if the minor's parent substantially complied with the limited guardianship placement plan, then the probate court does not even reach the best-interests analysis for termination. See MCL 700.5209(2), (1). As stated, the probate court did not clearly err by finding that Oakley substantially complied with the limited guardianship placement plan. So, the probate court was not required to determine whether terminating the limited guardianship would serve JO's best interests under MCL 700.5209.

Finally, Verona argues in her reply brief that the GAL failed to conduct an adequate investigation regarding Oakley's compliance with the limited guardianship placement plan and JO's best interests. We again disagree. To begin, reply briefs must be "confined to rebuttal of the arguments in the appellee's or cross-appellee's brief." MCR 7.212(G). "Raising an issue for the first time in a reply brief is not sufficient to present the issue for appeal." *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012) (quotation marks, brackets, and citation omitted). Regardless, Verona erroneously relies on MCL 712A.17d to support her argument. MCL 712A.17d addresses the powers and duties of a lawyer-guardian ad litem. See MCL 712A.17d(1). The probate court appointed the GAL as JO's guardian ad litem, not his lawyer-guardian ad litem. Compare MCL 700.5213(4) with MCL 700.5213(6). MCL 700.5213(6) allows a probate court to appoint a guardian ad litem during guardianship proceedings to "assist the court in determining a child's best interest[.]" The record reflects that the GAL did so here. The GAL prepared and filed a written report based on his correspondence with Oakley and Verona. He obtained proof of Oakley's income, housing, and car insurance, evaluated JO's needs based on his age and stage of development, and recommended that the probate court terminate the limited guardianship in light of his investigation. The GAL therefore fulfilled his obligation under MCL 700.5213(6).

We affirm.

/s/ Christopher M. Murray
/s/ Michael J. Kelly
/s/ Noah P. Hood