*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Guardianship of IS.

---

ODETA MUCAJ,

          Appellant,

v

ELISABETH DERY, Successor Guardian of IS, a legally protected person,

          Appellee,

and

SHALANDA C. LEGGS and HENRY SPAHIU,

          Other Parties.

UNPUBLISHED
June 11, 2025
9:30 AM

No.  372484
Oakland Probate Court
LC No.  2021-403561-DD

---

Before:  BOONSTRA, P.J., and REDFORD and MARIANI, JJ.

PER CURIAM.

In this guardianship proceeding under the Mental Health Code (MHC), MCL 330.1001 *et seq.*, appellant appeals as of right the trial court's opinion and order modifying the guardianship of appellant's daughter, IS, which provided that the court removed appellant as a partial coguardian of IS, and it appointed appellee, a professional guardian and IS's partial coguardian, as sole partial guardian of IS.  We affirm because the trial court reached the correct result, albeit under the improper statutory framework.

## I.  FACTUAL BACKGROUND

A factual summary regarding the underlying guardianship proceedings was previously provided by a panel of this Court in *In re Guardianship of IS*, unpublished per curiam opinion of the Court of Appeals, issued January 25, 2024 (Docket No. 367266), pp 1-2:

In 2007, when IS was a young child, she was injured in a car accident and suffered a traumatic brain injury resulting in permanent disabilities requiring ongoing care into her early adulthood. In November 2021, shortly after IS's 18th birthday, [appellant] filed a petition seeking appointment as IS's plenary guardian. According to [appellant], IS had substantial functional limitations with self-care, mobility, economic self-sufficiency, receptive and expressive language, learning, and capacity for independent living. The probate court ordered an independent evaluation of IS, as required by the MHC, MCL 330.1612(3), and appointed IS an attorney.

Following numerous adjournments, on October 6, 2022, the parties signed a temporary stipulated order agreeing that [appellant] and appellee . . . would serve as partial coguardians of IS. The parties also agreed to share guardianship duties in an arrangement designed to maximize IS's independence. For instance, the order entitled [appellant] to make all of IS's legal decisions, [appellee] to manage IS's finances, and IS to determine her own educational and employment pursuits. The order also maintained IS's current living arrangement and provided that IS and both her parents must be consulted about her medical treatment, with any disputes resolved by [appellee]. On October 17, 2022, the court entered a separate order granting [appellant's] petition and appointing [appellant] and [appellee] as partial coguardians for a term of five years. This order provided that [appellant] and [appellee] had to file an acceptance of the coguardian appointment. [Appellee], but not [appellant], did so. Nonetheless, the probate court issued letters of guardianship to both individuals stating that they were appointed and qualified to act as partial coguardians of IS.

In December 2022, the probate court issued a notice to [appellant] stating that she was not qualified to act as coguardian because she had not filed an acceptance of appointment. [Appellant] was then absent from the 90-day review hearing, during which both [appellee] and IS's father expressed concerns regarding [appellant's] conduct. They alleged that [appellant] had isolated IS and barred them from having any contact with IS. The probate court ordered [appellant] to allow IS to meet with [appellee] by January 31, 2023, and that if [appellant] refused to cooperate, a modification of the guardianship might be required.

Before the next review hearing, IS's appointed guardian ad litem (GAL) provided a report to the probate court that recommended removal of [appellant] as partial coguardian. On June 13, 2023, [appellant] was again absent from the review hearing. The GAL, [appellee], and IS's attorney complained that [appellant] was prohibiting IS from exercising independence despite IS's academic and personal achievements and that [appellant] purposely thwarted the parties' efforts to contact or meet with IS. At the conclusion of the hearing, the probate court, on its own motion, removed [appellant] as partial coguardian and appointed [appellee] as sole partial guardian. The court then issued an order modifying the guardianship that memorialized the decisions made on the record. [Appellant] moved for reconsideration, but the probate court denied her motion. The court concluded that [appellant] was never serving as partial coguardian because she never filed an

acceptance of appointment, and this "failure, refusal, or neglect . . . created the circumstances that resulted in her removal."

In the aforementioned matter, appellant contended that the trial court violated the procedures concerning the removal of a guardian or modification of a guardianship enumerated under the MHC by removing appellant as coguardian on its own motion as opposed to in response to a petition seeking such relief. *Id*. at 4. The panel opined, "Considering the sensitive interests involved in a guardianship proceeding, we decline to overlook the enumerated removal procedures in the MHC and endorse a view of the statute that would allow the probate court to remove a guardian on its own initiative." *Id*. at 5-6. The panel determined that because both the GAL and appellee maintained the authority to petition the court to discharge appellant as coguardian, the trial court abused its discretion by sua sponte removing appellant as coguardian without the filing of a petition and a hearing, as mandated under MCL 330.1637. *Id*. This Court vacated the trial court's order modifying IS's guardianship and removing appellant as partial coguardian, and it remanded the matter for further proceedings consistent with its opinion. *Id*. at 6.

Following the release of the *In re Guardianship of IS* opinion, appellee filed a petition to modify guardianship for a developmentally disabled individual, requesting her appointment as the sole partial guardian of IS and the removal of appellant as partial coguardian. In the petition, appellee contended:

> [Appellant] should be removed as co-partial guardian of Ward due to her lack of communication and coordination for the care and benefit of the Ward, leading to failure to comply with Court Order[.] The Ward has expressed [that] she does not want [appellant] to be her Guardian, and [appellant] still has also not filed her Acceptance of Appointment as Co-Partial Guardian, creating confusion among the Wards [sic] providers[.]

Over a three-day evidentiary hearing on appellee's petition following remand, seven witnesses, including IS, appellant, appellee, the GAL, and three expert witnesses testified. Following this evidentiary hearing, the trial court entered an opinion and order modifying the guardianship of IS, removing appellant as a partial coguardian of IS, and appointing appellee as sole partial guardian of IS. In its opinion and order, the trial court first determined, "a partial guardianship over financial, medical/mental health, legal, and contractual areas is appropriate, with [IS] acting independently with the support from others as needed in the areas of placement, vocation, and education" under MCL 330.1618 and MCL 330.1620. The court subsequently addressed the "suitability" of the potential guardians, i.e., appellant and appellee, and it cited *In re Guardianship of Redd*, 321 Mich App 398; 909 NW2d 289 (2017), to establish the proper standard of proof providing, "the court will determine the suitability of the proposed guardian(s) under a preponderance of the evidence standard with due consideration to [IS's] preference, as statutorily required under MCL 330.1628(2)."

The trial court delineated the terms of the October 6, 2022 consent order governing the terms of the parties' guardianship, and it opined appellant failed to comply with the majority of the provisions as, (1) "Medical decision-making did not transfer to [appellee], and [IS] was not afforded the opportunity to consult privately with her doctors," (2) finances were only partially transferred to appellee during the fall 2023, (3) appellant did not provide a home environment

-3-

designed to promote IS's independence, and (4) IS's counsel sought judicial intervention to ensure IS maintained access to her counsel; appellee; and other parties Henry Spahiu, who is IS's father; and her GAL. The court further noted that appellant subjected IS to "experimental treatments" abroad without seeking proper medical guidance, which "[c]ombined with [appellant's] prior disregard for court orders, and misrepresentations to the court to give the impression that she followed the law, indicates that [appellant] is not suitable to serve as a fiduciary." The trial court asserted that the record indicated discrepancies in IS's treatment when appellant was solely responsible for overseeing her care, rendering appellant unsuitable "to serve as a guardian with full medical and mental health powers and associated remedial care and consent to programs for [IS], and those powers should be granted to [appellee], the person preferred by [IS]."

In its opinion and order, the court further expressed that appellant improperly retained the funds related to IS's minor conservatorship account, and appellant neglected to provide the necessary medical records to appellee in order to secure Social Security benefits for IS. The trial court resolved, "Based upon the record before the court, and considering [IS's] preference, financial powers are granted to [appellee]." The court additionally stated:

> The record reflects repeated disregard for court orders, and significantly the right of [IS] to consult with her attorney and to see her father, her co-guardian, and her Guardian Ad Litem, demonstrates a pattern of isolating [IS] so that [appellant] remains the center of her universe. Under the evidence presented, and considering [IS's] stated preference, the legal/contractual and release of information and consent to photograph and fingerprint [IS], these powers are granted to [appellee]. [Appellant's] actions and testimony reflecting a disregard for court orders, and a disinclination to follow a regime she does not control or establish.

The trial court recognized appellant's "devotion and love for her daughter, and the bond between mother and daughter"; however, IS's excessive reliance on appellant, and their "complex interpersonal relationship," had impeded IS's development and independence. The court concluded:

> The statutory provisions, the case history and file, the evidence and testimony presented warrant a partial guardianship with [IS] retaining the rights and powers of placement/residency, education and vocation. [Appellee] is appointed as partial guardian for a term of five years with powers over financial, release of information, medical and mental health/psychiatric, consent to programs, consent to photograph and fingerprint, and legal/contractual powers, and shall serve upon filing of an acceptance of appointment.

This appeal followed.

## II. STANDARD OF REVIEW

"We review the probate court's dispositional rulings for an abuse of discretion." *Redd*, 321 Mich App at 403. "A probate court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes." *In re Bibi Guardianship*, 315 Mich App 323, 329; 890 NW2d 387 (2016) (quotation marks and citation omitted). "The trial court necessarily abuses

its discretion when it makes an error of law." *In re Nikooyi*, 341 Mich App 490, 494; 991 NW2d 619 (2022) (quotation marks and citation omitted). We review the probate court's findings of fact for clear error. *Bibi*, 315 Mich App at 328. A factual finding is clearly erroneous when this Court "is left with a definite and firm conviction that a mistake has been made . . . ." *Id*. at 329 (quotation marks and citation omitted). "We review de novo any statutory or constitutional interpretation by the probate court." *Redd*, 321 Mich App at 404.

Resolution of this appeal involves statutory interpretation. "All matters of statutory interpretation begin with an examination of the language of the statute." *McQueer v Perfect Fence Co*, 502 Mich 276, 286; 917 NW2d 584 (2018). If a statute is unambiguous, it "must be applied as written." *Id*. (quotation marks and citation omitted). This Court may not read something into the statute "that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Id*. (quotation marks and citation omitted). However, "to discern the Legislature's intent, statutory provisions are not to be read in isolation; rather, context matters, and thus statutory provisions are to be read as a whole." *Robinson v Lansing*, 486 Mich 1, 15; 782 NW2d 171 (2010). "Courts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory." *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002).

## III. MODIFICATION OF GUARDIANSHIP

Appellant argues that the trial court abused its discretion when it removed appellant as IS's partial coguardian and it appointed appellee as sole partial guardian. While we agree, we affirm because the trial court reached the correct result, albeit under an improper statutory framework.

"[T]he [MHC] provides that, except in the case of minors, a guardian for a developmentally disabled person may be made pursuant only to chapter 6 of the [MHC]." *In re Geror*, 286 Mich App 132, 133; 779 NW2d 316 (2009) (quotation marks and citation omitted). See also MCL 330.1604(2). "If the court determines that some form of guardianship is necessary, partial guardianship is the preferred form of guardianship for an individual with a developmental disability." MCL 330.1602(2). Furthermore,

> If it is found by clear and convincing evidence that the respondent is developmentally disabled and lacks the capacity to do some, but not all, of the tasks necessary to care for himself or herself or the respondent's estate, the court may appoint a partial guardian to provide guardianship services to the respondent, but the court shall not appoint a plenary guardian. [MCL 330.1618(4).]

In its order appointing a partial guardian, the court "shall define the powers and duties of the partial guardian so as to permit the individual with a developmental disability to care for himself or herself and his or her property commensurate with his or her ability to do so." MCL 330.1620(1).

Once a guardian, whether partial or plenary, is appointed for a person under the MHC, the guardian may be removed through the expiration of the term of the guardianship with no novel petition being filed, MCL 330.1626(3); or via the procedure outlined under MCL 330.1637. MCL 330.1637 governs petitions related to the discharge or modification of a guardianship and provides the following:

-5-

(1) A guardian for an individual with a developmental disability or the individual's estate who was appointed before the effective date of this act . . . or a guardian appointed under this chapter may be discharged, or have his or her duties modified, when the individual's capacity to perform the tasks necessary for the care of his or her person or the management of his or her estate have changed so as to warrant modification or discharge. The individual with a developmental disability, the individual's guardian, or any interested person on his or her behalf may petition the court for a discharge or modification order under this section.

(2) A request under subsection (1), if made by the individual with a developmental disability, may be communicated to the court by any means, including oral communication or informal letter. Upon receipt of the communication the court shall appoint a suitable person who may, but need not be, an employee of the state, county, community mental health services program, or court, to prepare and file with the court a petition reflecting the communication.

(3) The court, upon receipt of a petition filed under this section, shall conduct a hearing. At the hearing, the individual shall have all of the rights indicated in [MCL 330.1615 and MCL 330.1617].

(4) Upon conclusion of the hearing, the court shall enter a written order setting forth the factual basis for its findings and may do any of the following:

(a) Dismiss the petition.

(b) Remove the guardian and dissolve the guardianship order.

(c) Remove the guardian and appoint a successor.

(d) Modify the original guardianship order.

(e) Make any other order that the court considers appropriate and in the interests of the individual with a developmental disability.

Appellant argues that the trial court's reasoning for removal is improper because it focused on the appellant's "suitability" to serve as a guardian under MCL 330.1628, as opposed to abiding by MCL 330.1637, the statutory provision governing the removal of a guardian or modification of a guardianship under the MHC. We agree that the trial court failed to properly account for MCL 330.1637 in its analysis, but disagree that relief is warranted in this case as a result.

In the contested opinion and order, the trial court failed to expressly cite to MCL 330.1637 in its examination of the underlying matter, rather, the court provided at the outset of its analysis:

The dispute and the court's obligation, however, is two-fold:

A) designing a guardianship to "encourage the development of [IS's] maximum self-reliance and independence" given her actual mental and adaptive limitations, and

B) who is "suitable" to serve in such role giving "due consideration" to her preference.

The trial court further referred to the MHC provisions pertaining to the appointment of a guardian; MCL 330.1628(1), which states in pertinent part, "The court may appoint as guardian of an individual with a developmental disability any suitable individual or agency, public or private, including a private association capable of conducting an active guardianship program for an individual with a developmental disability," and MCL 330.1628(2), which provides, "Before the appointment, the court shall make a reasonable effort to question the individual concerning his or her preference regarding the person to be appointed guardian, and any preference indicated shall be given due consideration."

We recognize that this Court recently provided, in a matter concerning the modification of a guardianship of a legally protected person and the removal of a coguardian, that the trial court was permitted to conduct an unrecorded *in camera* interview of the legally incapacitated person to ascertain her preference under MCL 330.1628, indicating the aforementioned provision may be considered in such cases. See *In re Guardianship of AMMB*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368915); slip op at 4-6.[1] However, the pertinent statutory framework governing the modification of a guardianship or the dismissal of a guardian remains MCL 330.1637, which was entirely omitted from the instant trial court's analysis, despite this Court's previous instruction. See *In re Guardianship of IS*, unpub op at 4 (stating, "The letters of guardianship stated that [appellant's] term as partial coguardian did not expire until 2027, so removal *had to occur* under MCL 330.1637") (emphasis added). Additionally, this Court explained, "Considering the sensitive interests involved in a guardianship proceeding, we decline to overlook the enumerated removal procedures in the MHC and endorse a view of the statute that would allow the probate court to remove a guardian on its own initiative." *In re Guardianship of IS*, unpub op at 5-6. As the trial court failed to address the principal issue under the proper statutory provision, it necessarily abused its discretion. See *In re Estate of Vansach*, 324 Mich App 371, 385; 922 NW2d 136 (2018) (stating, "A trial court may also abuse its discretion by failing to operate within the correct legal framework").

Appellant further argues that the trial court erroneously relied on *Redd*, 321 Mich App 398, a matter governed under the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, as opposed to the MHC, in rendering its decision. However, the trial court solely cited *Redd*

---

[1] Appellant cites *In re Guardianship of Bazakis*, 342 Mich App 144, 162; 992 NW2d 673 (2022), vacated in part on other grounds 513 Mich 1006 (2024), for the proposition that MCL 330.1602, MCL 330.1618, and MCL 330.1628 were only relevant and mandatory for the appointment, not discharge, of a guardian. However, careful review of that opinion does not support that the trial court is prohibited from considering these statutory provisions. Rather, this Court held that no provision of the MHC *required* the trial court to take into account the preferences of the legally incapacitated person except when appointing a guardian. *Id*. As already noted, this Court has since indicated that at least MCL 330.1628 may be considered in the modification of a guardianship of a legally protected person and the removal of a coguardian. See *In re Guardianship of AMMB*, ___ Mich App at ___; slip op at 4-6.

to determine the proper burden of proof as it opined, "The burden of proof for the finding of suitability is not identified in the statute, unlike the burden of proof to determine the necessity for and scope of a guardianship. In this regard, the court finds portions of [*Redd*] instructive as to the burden of proof." Furthermore, while this Court recently stated in a matter concerning the modification of a guardianship of a legally protected person, "*Redd* is not applicable because this case involves the Mental Health Code, not EPIC," this Court did not expressly bar trial courts from examining the suitability of existing or proposed guardians under the MHC. *In re Guardianship of AMMB*, ___ Mich App at ___; slip op at 10. Rather, in response to the appellant's argument that the trial court "allegedly considered factors that are not delineated 'under the Code as to whether a person is no longer a suitable guardian,' " this Court responded, "The [MHC] does not list factors to consider and does not bar consideration of any of the factors considered by the probate court," such as the parties' competency, the parties' inadequate collaboration as coguardians, or the protected person's best interests. *Id*. at ___; slip op at 10-11.

While the trial court issued its ruling under the improper legal framework, we affirm the opinion and order on alternate grounds, in light of the procedural history of the case and the trial court's extensive findings regarding the propriety of the guardianship. See *Messenger v Ingham Co Prosecutor*, 232 Mich App 633, 643; 591 NW2d 393 (1998) (stating, "When this Court concludes that a trial court has reached the correct result, this Court will affirm even if it does so under alternative reasoning").

As provided, in relevant part, under MCL 330.1637(4), after the filing of a petition and a hearing, a trial court is permitted to enter a written order to "[r]emove the guardian and appoint a successor," "[m]odify the original guardianship order," or "[m]ake any other order that the court considers appropriate and in the interests of the individual with a developmental disability" on the condition it sets forth the factual basis for its findings. In this case, the court thoroughly detailed the witnesses' testimonies, addressed the various facets of the partial guardianship, examined the parties' conduct throughout the underlying guardianship proceedings and in their respective roles as guardians, and considered which form of guardianship would best promote IS's independence. While appellant argues that the trial court erroneously determined appellant was unsuitable to serve as IS's partial coguardian, the record provides ample evidence regarding appellant's improper conduct in overseeing IS's care, in conjunction with IS's preference for appellee to solely serve as partial guardian.

Appellant contends that the sole basis to warrant a modification of guardianship or the removal of a guardian is under MCL 330.1637(1), which states in pertinent part, "A guardian . . . appointed under this chapter *may* be discharged, or have his or her duties modified, when the individual's capacity to perform the tasks necessary for the care of his or her person or the management of his or her estate have changed so as to warrant modification or discharge." (Emphasis added.) However, the broad language of MCL 330.1637 provides courts with significant discretion, particularly under MCL 330.1637(4), to do so beyond the presence of changes of the legally protected person's capacity. See *Robinson*, 486 Mich at 15 (providing that statutory provisions are to be read as a whole).

While MCL 330.1637(1) provides a basis for modifying guardianships, the provision does not purport to be the *exclusive* means by which such modifications may occur. Rather, interpreting the statute so narrowly would undermine the purpose of guardianships, as it would effectively

require legally protected individuals—who may be in a permanent state of disability—to demonstrate a change in capacity, even in the face of concerning circumstances such as abuse. See MCL 330.1602 (stating, "Guardianship for individuals with developmental disability shall be utilized only as is necessary to promote and protect the well-being of the individual, including protection from neglect, exploitation, and abuse . . . [and] shall be designed to encourage the development of maximum self-reliance and independence in the individual"); see also *Attorney General v Blue Cross Blue Shield of Mich*, 291 Mich App 64, 78; 810 NW2d 603 (2010) (noting, "This Court's goal when interpreting a statute is to discern and give effect to the Legislature's intent"). Because the factors that formed the basis of the trial court's decision to modify the guardianship are consistent with the MHC, see *In re Guardianship of AMMB*, ___ Mich App at ___; slip op at 10-11, and because the court reached the proper result albeit on improper grounds, we conclude the contested opinion and order should be sustained.

Affirmed.

/s/ Mark T. Boonstra
/s/ James Robert Redford
/s/ Philip P. Mariani