*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* RKS III.

KENNIDY COBURN,

        Petitioner-Appellee,

v

RKS III,

        Respondent-Appellant.

UNPUBLISHED
August 13, 2025
1:42 PM

No. 374355
Kent Probate Court
LC No. 25-932913-MI

Before: O'BRIEN, P.J., and BOONSTRA and WALLACE, JJ.

PER CURIAM.

Respondent, RKS III, appeals as of right the probate court's order requiring respondent to involuntarily undergo mental-health treatment pursuant to the Mental Health Code, MCL 330.1001 *et seq.* We affirm.

## I. BACKGROUND

In January 2025, a social worker petitioned the trial court to order the hospitalization of, and assisted outpatient treatment for, respondent because respondent was "endorsing homicidal ideation" toward his grandmother and father with a "plan and intent to harm" his father, and respondent was having visual and auditory hallucinations of "things burning" and "each emotion [having] a voice." The petition was supported by two "clinical certificates."

The first clinical certificate was signed by psychiatrist Jamie McLean. McLean represented that she had personally examined respondent at Network180, and that respondent told McLean that he could "see himself killing his dad and grandma [because] of physical [and] verbal abuse he [had] endured from them in the past." McLean further represented that respondent said to a clinician that he did not want treatment because he did not "want it to dull his desire to kill his dad." In McLean's opinion, respondent was a person requiring treatment under the Mental Health Code, and she recommended hospitalization.

The second clinical certificate was signed by psychiatrist Jonathon Dozeman. Dozeman represented that he had personally examined respondent at Pine Rest Christian Mental Health Services, and had also reviewed respondent's records. Those records, according to Dozeman, stated that respondent was brought in for treatment because he was having "homicidal ideation" towards his grandmother and father and "expressed a calculated plan to kill [his] father and get away with it," but he declined treatment. In Dozeman's examination of respondent, respondent admitted to having "murderous thoughts" but denied having a plan. Like McLean, Dozeman opined that respondent was a person requiring treatment under the Mental Health Code, and he recommended a combination of hospitalization and assisted outpatient treatment.

The trial court held a hearing on the petition for mental-health treatment, at which Dozeman testified in support of the petition. According to Dozeman, after meeting with respondent, Dozeman diagnosed him with "[t]rauma and stressor related disorder." The basis for this diagnosis, Dozeman explained, was a combination of his examination of respondent and his review of respondent's records. Dozeman elaborated that, according to respondent's records, during an evaluation at Network180, he admitted to having "homicidal thoughts towards his father and grandmother," "endorsed having a calculated plan to kill his father, expressed belief that he would be able to get away with it, and . . . declined treatment, at the time, because he did not want the treatment to get rid of his homicidal thoughts toward[] his father." With Dozeman, respondent admitted to his homicidal thoughts but "declined that he had a plan or intent" to act on them. Dozeman was not aware of respondent acting on his homicidal thoughts in any way other than telling Network180 that "he had a calculated plan" for killing his father. When asked whether respondent was a danger to himself, Dozeman said that he believed that respondent was "mainly . . . a danger to others."

After the petition was filed, respondent was admitted to a facility where Dozeman practiced, and Dozeman testified about respondent's behavior while there. According to Dozeman, since being admitted, respondent had gone "on a three-day hunger strike," "was largely uncooperative," denied the "need for treatment," and minimized "the severity of the situation." Dozeman also believed that respondent had shown "poor judgment" in that "[h]e was prepared to let his bearded dragon . . . die rather than communicate with his family to take care of" it while he was away. On the treatment front, Dozeman explained that respondent was refusing "medication treatment," despite previously taking medication with success, because respondent did not think it was "a good idea to get back on medication." Respondent had also begun saying that his homicidal thoughts were "in the rearview mirror," which Dozeman did not believe because he had recently heard respondent "ask[ing] God to keep himself and others safe from his vengeful thoughts." This, Dozeman believed, showed that respondent had "some insight to the severity of the situation, even though he's mostly minimizing it with us." Dozeman opined that respondent did not fully understand the need for treatment because he thought that "his homicidal thoughts [were] justified."

After Dozeman finished testifying, respondent declined to testify, and the trial court issued a ruling from the bench. The court found that petitioner had established by clear and convincing evidence that respondent was a person requiring treatment under the Mental Health Code; that respondent posed "a direct risk of harm" to others, particularly his father and grandmother; and that respondent did not understand his need for treatment and had demonstrated an unwillingness

-2-

to voluntarily participate in treatment. Accordingly, the trial court granted the petition and ordered hospitalization of respondent.

This appeal followed.

## II. HEARSAY

Respondent contends that the probate court reversibly erred by considering two statements that constituted inadmissible hearsay: (1) the statement that respondent had a "plan" to kill his father and (2) the statement that respondent did not want treatment because he did not "want it to dull his desire to kill his dad."

Respondent failed to raise an objection to these statements before the probate court, so his arguments are unpreserved, and our review is for plain error affecting substantial rights. See *In re MAT*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 369255); slip op at 6.

Hearsay is an out-of-court statement that a party offers "to prove the truth of the matter asserted in the statement." MRE 801(c). Hearsay is inadmissible absent an exception. MRE 802. The rules of evidence, however, do not strictly apply to "hearings under Chapters 4, 4A, 5, and 6 of the Mental Health Code, MCL 330.1400 *et seq*., during which the court may consider hearsay data that are part of the basis for the opinion presented by a testifying mental health expert." MRE 1101(b)(10). "Hearsay data" refers to "documents not personally prepared by the witness." *In re MAT*, ___ Mich App at ___ n 3; slip op at 7 n 3 (quotation marks, citation, and brackets omitted).

First addressing the statement that respondent had a "plan" to kill his father, it was not obviously inadmissible. True, the statement was hearsay—Dozeman's clinical certificate stated that respondent had "expressed a calculated plan to kill father" according to a "report" that Dozeman had reviewed, and Dozeman testified at respondent's hearing that respondent had "a calculated plan to kill his father" "[a]ccording to documentation from Network180." But Dozeman testified that he relied on these documents when diagnosing respondent, so the court was permitted to consider the statement pursuant to MRE 1101(b)(10).[1]

As for the statement in McLean's clinical certificate that respondent did not want treatment because he did not "want it to dull his desire to kill his dad," respondent is again correct that this statement was double hearsay—McLean did not testify, and McLean's certificate states that she was told about respondent's statement by an unnamed "clinician." But Dozeman testified that he relied on this hearsay data to form his opinion—he said that his diagnosis of respondent was based in part on his review of "documentation from Network180" (where McLean examined respondent) stating that respondent refused treatment "because he did not want the treatment to get rid of his

---

[1] Respondent rightly notes that, when respondent was examined by Dozeman, respondent denied having a plan. But contrary to respondent's assertion, this does not "contradict" that respondent had a plan to kill his father—it only establishes that respondent denied having such a plan when he was examined by Dozeman. At any rate, evidence does not become inadmissible if it is contradicted by other evidence. Instead, such discrepancies create factual issues for the factfinder to resolve.

-3-

homicidal thoughts towards his father." The probate court later specifically asked Dozeman whether he had reviewed the statement in McLean's clinical certificate that respondent takes issue with, and Dozeman said that he had, that he asked respondent about it while examining him, and that respondent denied making it. Accordingly, while both McLean's clinical certificate and the statement therein were hearsay data, Dozeman's testimony clearly established that this hearsay data formed part of the basis for his opinion. The probate court was thus permitted to consider that evidence under MRE 1101(b)(10).

Accordingly, respondent has not identified any error in the admission of evidence at his hearing, let alone plain error that affected his substantial rights.

### III. PERSON REQUIRING TREATMENT

Respondent also contests the probate court's finding that he was a "person requiring treatment" under MCL 330.1401.

The probate court's dispositional decisions are reviewed for an abuse of discretion. *In re Bibi Guardianship*, 315 Mich App 323, 328; 890 NW2d 387 (2016). An abuse of discretion occurs when a lower court "chooses an outcome outside the range of reasonable and principled outcomes." *Id*. at 329. Factual findings are reviewed for clear error. *Id*. at 328. A finding is "clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake was made." *Id*. at 329. Questions of law, including whether the probate court properly interpreted and applied the relevant statutes and court rules to the facts, are reviewed de novo. See *Kaeb v Kaeb*, 309 Mich App 556, 564; 873 NW2d 319 (2015).

The Mental Health Code sets forth the procedure for requesting an order of involuntary mental health treatment, generally referred to as civil-commitment proceedings. See *In re Portus*, 325 Mich App 374, 382; 926 NW2d 33 (2018). Civil-commitment proceedings are initiated when a person files a petition with the court asserting that "an individual is a person requiring treatment." MCL 330.1434. A "person requiring treatment" is defined in relevant as:

> (a) An individual who has mental illness,[2] and who as a result of that mental illness can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure himself, herself, or another individual, and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation.
>
> * * *
>
> (c) An individual who has mental illness, whose judgment is so impaired by that mental illness, and whose lack of understanding of the need for treatment has

---

[2] "Mental illness" is defined as a "substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." MCL 330.1400(g). Respondent does not contest the probate court's finding that petitioner established by clear and convincing evidence that respondent had a mental illness.

-4-

caused him or her to demonstrate an unwillingness to voluntarily participate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration of his or her condition, and presents a substantial risk of significant physical or mental harm to the individual or others. [MCL 330.1401(1).]

An individual can only be adjudged as "a person requiring treatment" if that fact is established by clear and convincing evidence. MCL 330.1465. Clear and convincing evidence is evidence that "produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In re MAT*, ___ Mich App at ___; slip op at 6 (quotation marks and citation omitted).

Respondent contends that the evidence presented at his hearing did not establish by clear and convincing evidence that he was a "person requiring treatment" because the evidence showed only a "suspicion that [he] might potentially be a risk to someone else." We are not persuaded.

Dozeman testified that he reviewed reports stating that respondent had admitted to having "homicidal thoughts towards his father and grandmother" and "a calculated plan to kill his father." After respondent was admitted to Dozeman's facility, he continued to have "homicidal thoughts" but denied having a plan. Dozeman further testified that respondent had been "largely uncooperative"; tried to minimize the severity of the circumstances that led to the instant proceedings despite showing "some insight into the severity of the situation" as shown by his praying "to keep himself and others safe from his vengeful thoughts"; declined medication that had helped him with similar issues in the past; and denied the need for treatment because he believed that "his homicidal thoughts [were] justified." Dozeman opined that, under the circumstances, respondent was "a danger to others."

This evidence established that respondent had repeated and ongoing thoughts of murdering his father and grandmother; the thoughts had gone as far as planning the murder of his father; respondent recognized, to some extent, that his thoughts were dangerous and placed others at risk; but respondent did not want treatment to help alleviate these thoughts—despite having had success with medications in the past—because he felt that the thoughts were justified. On such a record, we are not persuaded that the trial clearly erred when it found by clear and convincing evidence that respondent was "a person requiring treatment" under MCL 330.1401(1)(a) and (c).[3]

Affirmed.

/s/ Colleen A. O'Brien
/s/ Mark T. Boonstra
/s/ Randy J. Wallace

---

[3] The trial court also found that respondent was a person requiring treatment under MCL 330.1401(1)(b), but to any extent that this decision was erroneous, it was harmless.